# MOTION UNDER 28 USC § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District<br>Middle District of Pennsylvania | |
|---|---|---|
| Name of Movant<br><br>Jeffrey Holland | Prisoner's No.<br><br>36909-083 | Docket No.<br><br>1:CR-01-195-02 |
| Place of Confinement<br><br>United States Penitentiary - Lee County, Virginia | | |

| | |
|---|---|
| **UNITED STATES OF AMERICA** V | (Include name upon which convicted)<br><br>Jeffrey Holland<br><br>(Full name of movant) |

## MOTION

1. Name and location of court which entered the judgment of conviction under attack _____

   United States - District Court - Middle District of Pennsylvania

2. Date of judgement of conviction    June 6, 2002

3. Length of sentence    **Life**

4. Nature of offense involved (all counts)  Count (1) Aid/abet - Poss./Dist. 50 grams crack §21 §841 Count (3) §924(c) Gun Conviction (for Count 1 Predicate) Count (5) §846 Conspiracy to Poss./Dist. (50) grams or more of Crack

5. What was your plea? (Check one)
   - (a)  Not guilty  ☒
   - (b)  Guilty  ☐
   - (c)  Nolo contendere  ☐

**FILED**
**HARRISBURG, PA**

FEB 0 2 2005

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

6. Kind of trial: (Check one)
   - (a)  Jury  ☒
   - (b)  Judge only  ☐

7. Did you testify at trial?
   Yes ☐    No ☒

8. Did you appeal from the judgment of conviction?
   Yes ☒    No ☐

9.    If you did appeal, answer the following:

    (a)    Name of court    United States Court of Appeals (3rd Cir.)

    (b)    Result    Denied

    (c)    Date of Result    Sept. 23, 2003 (C.A. Docket # 02-4005)

10.   Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications or motions with respect to this judgement in any federal court?
    Yes ☐       No ☒

11.   If your answer to 10 was "yes," give the following information:

    (a)    (1) Name of court    N/A

        (2) Nature of proceedings

        (3) Grounds raised    N/A

        (4) Did you receive an evidentiary hearing on your petition, application or motion?
    Yes ☐       No ☒

        (5) Result    N/A

        (6) Date of result

    (b)  As to any second petition, application or motion, give the same information:

        (1) Name of Court    N/A

        (2) Nature of proceeding

        (3) Grounds raised    N/A

        (4) Did you receive an evidentiary hearing on your petition, application or motion?
    Yes ☐       No ☒

(5) Result _____ N/A _____

(6) Date of Result _____

(c)  As to any third petition, application or motion, give the same information:

(1) Name of Court _____ N/A _____

(2) Nature of proceeding _____

_____

(3) Grounds raised _____ N/A _____

_____

_____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?

Yes ☐    No ☒

(5) Result _____ N/A _____

(6) Date of Result _____

(d)  Did you appeal, to an appellate federal court having jurisdiction, the result of action taken on any petition, application or motion?

(1) First petition, etc.     Yes ☐     No ☒
(2) Second petition, etc.     Yes ☐     No ☒
(3) Third petition, etc.     Yes ☐     No ☒

(e)  If you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

_____ N/A (only direct appeal listed) _____

_____

_____

12.    State concisely every ground on which you claim that you are being held unlawfully. Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting same.

CAUTION: If you fail to set forth all grounds in this matter, you may be barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in these proceedings.  Each statement preceded by a letter constitutes a separate ground for relief.  You may raise any ground which you have other than those listed.  However, you should raise in this motion all available grounds (relating to this conviction) on which you based your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds.  If you select one or more of these grounds for relief, you must allege facts.  The motion will be returned to you if you merely check (a) through (j) or any one of the grounds.

(a)  Conviction obtained by plea of guilty which was unlawfully induced or not made voluntary or with understanding of the nature of the charge and the consequences of the plea.

(b)  Convictions obtained by use of coerced confession.
(c)  Convictions obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
(d)  Convictions obtained by use of evidence obtained pursuant to an unlawful arrest.
(e)  Convictions obtained by a violation of the protection against self-incrimination.
(f)  Convictions obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g)  Convictions obtained by the violation of the protection against double jeopardy.
(h)  Convictions obtained by action of a grand or petit jury which was unconstitutionally selected and impanelled.
(i)  Denial of effective assistance of counsel.
(j)  Denial of right of appeal.

### Trail Errrors at A,B, and C.

A. Ground one: "Nonrecordation" of exparte Sidebars, violation of Fifth Amendment USC. Due Process, F.R.Cr.P. 43 (right to be present), Court Reporter Act 28 USC § 753.

Supporting FACTS (tell your story briefly without citing cases or law): Trial counsel was uncon-stitutionally ineffective for his failure to object to statutory, Constitutional and Due Process error's; Appeals counsel was ineffective for failure to investigate and raise issues in appeal brief, (6th U.S.C.A.) **(See Attachment)**

B. Ground two: Use of Coconspirators guilty pleas as substantive proof of defendants guilt in controlled substance offense charged, denial of due process guarantees(5th USCA)

Supporting FACTS (tell your story briefly without citing cases or law): Trial Counsel was unconsti-tutionally ineffective for his failure to object, preserve error, and seek limiting (cautionary) instructions. Appeals counsel was ineffective for failure to investigate and raise issue in appeals court. (6th U.S.C.A.)**(See Attachment)**

C. Ground three: Jury verdict coercion as per Courts substantive and supplementary jury charge, in violation of due process guarantees.(5th U.S.C.A.)

Supporting FACTS (tell your story briefly without citing cases or law): Trial counsel was unconsti-tutionally ineffective for his failure to object, seek limting instruction at supplementary jury charge; Appeals counsel was ineffective for failure to properly argue issue at appeals court. (6th U.S.C.A.)**(See Attachment)**

**Sentencing Errors**

D. Ground four: **See Addendum Attached:** In support of claim relying on intervening change in constitutional law, as per United States Supreme Court, **Blakely v. Washington**, 542 U.S. ___, 2004 (02-1632). And or the final ruling relying on **U.S. Supreme Court at Number 04-104, U.S. vs. Booker, 04-105, U.S. vs. Fan Fan**. Motion to vacate sentence, and or conviction, in violation the the 6th Amendment USC.

Supporting FACTS (tell your short briefly without citing cases or law):

13. If any of the grounds listed in 12A, B, C, and D were not previously presented, state briefly wl grounds were not so presented, and give your reasons for not presenting them: None of them previously presented. Due to ineffective counsel at trial and on appeal.

14. Do you have any petition or appeal now pending in any court as to the judgement under attack?
Yes ☐    No ☒

15. Give the name and address, if known, of each attorney who represented you in the following sta of the judgement attacked herein:

(a) At preliminary hearing _____ Timothy J. O'Connell (Arraignment) _____
_____ (unknown address) _____

(b) At arraignment and plea _____ Timothy J. O'Connell _____

(c) At trial Timothy O'Connell    (Attorney at Law) 4415 North Front Street Harrisburg, PA 17110  (717) 232-4551    Fax: (717) 232-2115

(d) At sentencing   (Same as "trial" above)

(e) On appeal   Lenora M. Smith, Attorney-at-Law

(f) In any post-conviction proceeding _____ (Pro se) present § 2255 at bar

(g) On appeal from any adverse ruling in a post-conviction proceeding _____
                    (none)

Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court at approximately the same time?

Yes ☒        No ☐

Do you have any future sentences to serve after you complete the sentence imposed by the judgement under attack?

Yes ☐        No ☒

(a) If so, give name and location of court which imposed sentence to be served in the future:
    N/A

(b) Give date and length of the above sentence:    N/A

(c) Have you filed, or do you contemplate filing, any petition attacking the judgement which imposed the sentence to be served in the future?

Yes ☐        No ☒

herefore, movant prays that the Court grant him all relief to which he may be entitled in this proceeding.

_NA_
                                        Signature of Attorney (if any)

eclare under penalty of perjury that the foregoing is true and correct.  Executed on:    _PRO SE_

_1 30 05_
    (date)

_Jeffrey Hoff_
                                        Signature of Movant

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

JEFFREY HOLLAND,
        Movant,

        v                                    CASE NO. 1:01-CR-195-02, 06

UNITED STATES OF AMERICA,
        Respondant.

========================================================================

MEMORANDUM OF LAW IN SUPPORT OF ISSUES PRESENTED IN MOTION TO VACATE,
    SET ASIDE OR CORRECT THE SENTENCE PURSUANT TO 28 U.S.C. §2255

========================================================================

Now into court; comes Jeffrey Holland, proceeding herein pro se, and hereby presents this memorandum of law in support of his motion to vacate, set aside or correct the sentence pursuant to title 28 U.S.C. §2255. Arguments herein are supported by authorities in law, Mathis v. New York Life Ins., Co., 133 F.3d 546.

Due to the pro se nature of "motion to vacate" movant seeks that this court provide a less stringent standard of review and a liberal construction when examining citation of case law, rules, regulations, (procedures), or his efforts at legal syntax, Boag v. MacDougall, 454 U.S. 314, 70 L.Ed. 2d 551, 102 S.Ct. 701 (1982).

## STATEMENT OF JURISDICTION

This Honorable Court, being the original court of conviction and sentencing, jurisdiction is conferred at 18 U.S.C. §3232, in conformity with the plain language of 28 U.S.C. §2255.

## CONSTITUTIONAL AMENDMENTS INVOLVED

The legal issues as presented herein; argued below through law and facts provides numerous 'constitutional questions' either singularly or cumulatively all amounting to errors which sufficiently rise to a level

in order to qualify as denial of constitutional guarantees, i.e.,
U.S. Constitutional Amendment at 6th, which delcares:

> "[I]n all criminal prosecutions, the accused shall enjoy
> the right ... to assistance of counsel for defense."

It is the movant's contention by way of this 'memorandum of law'
that he was denied the effective assistance of counsel in numerous cri-
tical stages of his trial and at Sentencing, **Childress v. Johnson, 103
F.3d 1221 (5th Cir. 1997).**

## STATEMENT OF THE CASE

This matter comes before the United States District Court for the
Middle District of Pennsylvania, as the court of original jurisdiction,
where a Second Superseding indictment was filed on January 4th, 2002.

Although the indictment charged four counts against movant, the
focus of contention herein will be limited to the three counts of con-
viction and sentence resulting from jury trial held before the Hon. Judge
William W. Caldwell, on the date of June 6th, 2002.

The pertinent Counts to the indictment charges as follows:

### COUNT I

Intentionally and knowingly manufacturing, distributing, and pos-
sessing with intent to manufacture and distribute 50 grams or more of
cocaine base, also known as "crack" cocaine, and aiding and abetting,
counseling, commanding, inducing, and procurring the same in violation
of 21 U.S.C. §841(a)(1) and 18 U.S.C. §2.

### COUNT III

Intentionally and knowingly using a firearm in the furtherance of
a drug trafficking crime in violation of 18 U.S.C. §924(c) and 18 U.S.C. §2.

## COUNT V

Conspiracy to manufacture, distribute and possess, with intent to manufacture and distribute 50 grams or more of cocaine base, also known as 'crack' cocaine, in violation of **21 U.S.C. § 846.**

All three offenses as charged above are alleged to have occurred from on or after November 1st, 1997 til about April 1st 2001.  The jury found mavant guilty of the above cited counts on June 6th 2002.

"[O]n October 10, 2002, the District Court imposed a cumlative sentence of 2 current life sentences, plus sixty (60) months to run consecutive to the life sentence."  A fine of $63,000.00 plus $2,000.00 and special assessment of $100.00 on each count.  10 years supervised release.

## APPEAL

Notice of Appeal was filed in this instant case on October 21st, 2002 by **Lenora M. Smith,** 1205 North Second Street, P.O. Box 5154, Harrisburg, PA 17110.  The Thrid Circuit Court of Appeals affirmed the judgment of conviction and sentencing on September 23rd, 2003.

Movant filed a petition for Writ of Certiorari, and Motion to Proceed Informa Pauperis, to the United States Supreme Court on December 23rd, 2003.  The United States Supreme Court denied the Motion to Proceed Informa Pauperis and the Writ of Certiorari on the date of **February 23rd, 2004.**

## TIMELINESS

Therefore based on the above stated facts and dates,  this motion and memorandum of law in support thereof pursuant to **28 U.S.C. § 2255,**

i.e., Motion to Vacate, Set Aside or Correct the Sentence, is timely filed. All commensurate with legislative amendment promulgated as the **Antiterroism and Effective Death Penalty Act of 1996 [AEDPA].** See: **Artuz v. Bennett, 121 S.Ct. 361 (2000)** and **Kapral v. United States, 166 F. #d 565 (3rd Cir. 199).**

## ATTACHMENTS

This motion pursuant to **28 U.S.C. § 2255,** is filed Pro Se, attached hereto is the following enumerated exhibit in support of issues raised [ Exhibit 1, 2, 3, and 4.], additionally factual claims alleged in each issue demonstrate numerous instances of specific errors committed by trial counsel, amounting to a performance below an objective standard of reasonableness, **Smith v. Wainwright, 777 F.2d 609.** The claims are supported by affidavit, sworn under the penalty of perjury, thus qual-ifying by law to be accepted as the truth, **Cooper v. pate, 378 U.S. 546, 12 L Ed 2d 1030, 84 S.Ct. 1733 (1964).**

Attachments also include Motion for Appointment of Counsel, show of cause, addendum (Blakely claim), evidenctiary hearing, in that the issue raised may be properly explored in the presence of the judiciary, **Emberg v. Wyoming, 265 F.3d 1109 (10th Cir. 2001).**

## STANDARD OF REVIEW

When evaluating a claim of ineffective assistance of counsel the standard of review universally applies in the federal courts stem from binding authority, where the **United States Supreme Court** has observed "[w]e established the legal principle that govern claims of ineffective assistance of counsel." **Strickland v. Washington, 466 US 688, 80 L Ed 2d 674, 104 S.Ct. 2052 (1984);**

"[A]n ineffective assistance claim has two compoents: A petitioner must show that counsels performance was deficient and that the deficiency

-IV-

prejudice the defense." Id. at., 687, 80 L.Ed.2d 674, 104 S.Ct. 2025.
"[T]o establish deficient performance a petitioner must demonstrate
that counsels representation fell below an objective standard of reason-
ableness." Id., at 688, 80 L.Ed.2d 674, 104 S.Ct. 2052. referenced at
Wiggins v. Smith, 156 L.Ed.2d 471 at 484 (2003).

This District Court bound by the precedent authorities of the third
circuit, which has also recognized no numerous instances, such that are
analogious  to ineffective counsel claims and issues set forth below, has
also required a showing of "[a] reasonable probability that the result
would have been different but for the (counsels) professional errors" as
part of the Strickland's prejudicial  requisite findings, i.e. the second
component Deputy v. Taylor, 19 F.3d 1485, 1493 (3rd Cir. 1994).

However,  th eUnited States Supreme Court has strictly advised as
against a narrow reading or application of the 'second part' (prejudicial
requisite) to the Strickland standard, holding:

> "[S]trickland held that to prove prejudice the defendand must
> establish a "reasonable probability that but for counsel's
> unprofessional errors, the result of the proceeding would have
> been different." id., at 694, 104 S.Ct. 2025 (emphasis added)
> it specifically rejected th eproposition that the defendant had
> to prove it more likely than not that the outcome would have
> been different." id., at 694, 104 S.Ct. 2025  (cited at)
> Woodford v. Visciotti, 537 US 19, 154 L.Ed.2d 279,
> 123 S.Ct. 357 (2002)

Movant herein below will demonstrate that the appellate counsel was
also ineffective by way of his failure to raise before the court of appeals,
any single error from amongst the numerous 'professional errors' committed
by trial counsel. Upon doing so the two part test generally applied with
regards to trial counsel, will also be applicable to the appeals attorney,
i.e. Strickland Standard, U.S. v. Mannino, 212 F.3d 835 (3rd Cir. 2000).

## GROUND ONE

**The Trial Attorney Was Unconstitutionally Ineffective Due To His Failure To Object And Or Preserve Errors Committed By The Court Where The Judge Committed Errors By Allowing Two Unrecorded Ex Parte Sidebars, During Substantive And Supplementary Jury Charge (Instructions), In Violation Of 6th Amendment Confrontation Clause, 5th Amendment Due Process, Federal Rules Of Criminal Procedure §43, Right To Be Present And The Court Reporter Act 28 U.S.C. §753.  Appellate Counsel Was Also Ineffective For His Failure To Raise Issues In Appeals Court.**

## THE FACTS

The claims set forth below are premised on two separate and distinct legal proceedings **(1)** "nonrecordation" of ex parte sidebar, occurring during the course of substantive jury charge (instructions) at the conclusion of trial, and **(2)** "nonrecordation" of ex parte sidebar, occurring during the course of the supplementary jury charge (instructions) subsequent to a jury note (question), while in deliberations.  Were on both occasions the court (judge) allowed or committed a plethora of prejudicial errors, causing movant to be denied numerous constitutional protections (rights); trial counsel failed to object, and appellate counsel failed to investigate the records in order to include issues in appellate brief.  Causing that movant has received unconstitutional ineffective assistance of counsel.  **Sixth Amendment, United States Constitution.**

What follows is verbatim quotes from trial transcripts of proceeding number one (substantive jury charge, with errors related to first sidebar), then proceeding two relevant portion prior to actual (supplementary jury charge, with errors related to second sidebar); used herein to illustrate as a factual matter how and by what means prejudicial errors occurred such that are sufficiently egregious to warrant relief commensurate with **28 U.S.C. §2255.**

## TRANSCRIPTS OF PROCEEDINGS NUMBER ONE

At the conclusion of defense case at trial, the judge while delivering his substantive jury charge, paused in order to effect an inquiry to the adversarial parties, whereupon the following dialogue occurred. **"...is the government satisfied?"** The attorney for the government, Mr. Behe, replied: **"... may we approach on a matter?"**

The judge responded in the affirmative, but first repeated his question to the defense. The attorney, Mr. Timothy J. O'Connell representing movant made the following limited response to the judge's question: **"If we are waiting to approach, I will make my..."** Trial judge then stated: **"Fine." "Excuse us for just a moment."**

**(An off the record discussion was had at sidebar)**

## TRANSCRIPTS OF PROCEEDINGS NUMBER TWO

The following portion of quotations are for the limited purpose of providing complete context to movant's claim related to second sidebar conference and the existence thereof, as it was related to the deliberating jury's question regarding government's failure to prove element of controlled substance offenses **(weight)**, as charged in the indictment; this dialogue occurred **pre-sidebar**, the succeeding portion will be located in arguments supported by law that demonstrate **prejudice**.

**The jury has a question at 3:00 pm.**

The Court: **Folkes, we have the question that you asked about the 20 dollar bag and what it weighs; is that correct?** And you indicate that you have no reference to determine weight, no direct testimony as to the specific weight amounts, et cetra.

There was no testimony on this point. I can agree with that. There was testimony, however, about quantity depending on what you believe, not necessarily weights. One person described some cocaine as may be the size of a baseball or orange or something I remember. That is the only testimony that would enable you to come to some conclusion about weight.

I did indicate to you I believe that fifty grams weighs an ounce and a half. You will have to determine, if you can, whether or not the government has proved

2

beyond a reasonable doubt that fifty grams or more, or five or under five grams was distributed.

...We cannot supplement the record at this point with additional evidence. That is just something that we cannot provide for you. So all I can say is we can't answer that question because it isn't in the record, and we can't now add evidence that was not presented during the trial. So you will just have to do your best with the evidence that you heard. ...I think that is just something that everybody knows, and I thought I should convey to you.

MR. BEHE: Your Honor, before we retire, may we speak at sidebar?

THE COURT: Sure.

**(An off the record discussion was had at sidebar)**

This conclude quotes related to unrecorded ex parte sidebar proceedings one transcripts paged 547-48, and two at transcripts pages 2-3. (Jury Question) As noted above the entire proceeding cited was preceded by a jury note (question #4) wherein they informed the court they received no direct evidence or testimony as to specific weights; thus copies of relevant portions of proceedings 1 and 2, plus jury's note are provided at **[Exhibit One]**.

Movant insist that there had to have been substantial legal discussions during the two sidebars, both serving as "critical stages of trial proceedings." The record bears out that there was no transparency as to complete contents or details of unrecorded conferences (an arbitrary effort), but what's apparent is the serious nature of subject matter at the two sidebars, as per judge's instructions afterwards; at the rubric for **prejudice** movant provides elaboration on this point jointly. Through inadvertence or otherwise the stenographer failed to participate or simply failed to transcribe the pertinent portions under complaint herein, such must be chargeable to the court. Those portions being; **(1) the attorney O'Connell's response to the judge's question, and (2) the two separate ex parte sidebar proceedings.** See **United States v. Workcuff, 422 F.2d 700, 701-02 (D.C. Cir. 1970).** Additionally there

3

was no efforts by movant's attorney to achieve the participation of movant in the sidebar proceedings, as it appears counsel merely acquiesced in the government's request. By doing so trial counsel failed to assert client's interest, making sure that the contentious issue which was the subject during the sidebars be made clear in the records; accordingly movant was all but present at those critical stages of trial.

## THE LAW

The errors committed at trial are divided into two parts, entirely for the purpose of conveying as to how, either in whole or in part, this court will find the violations to be in clear contravention of prevailing legal norms premised on constitutional and statutory laws of the United States.

The essence of legal claims made herein as to the first of the **two parts**, is movant's **right to be present at every stage of trial**. This right is guaranteed by way of "[t]he confrontation clause of the Sixth Amendment, the due process clause of the Fifth Amendment, and Federal Rules of Criminal Procedure 43." See **United States v. Brantly, 68 F.3d 1283, 1290-91 (11th Cir. 1995).**

Movant's right to be present at all stages of trial is even acknowledged by the likes of the late **Mr. Charles Alen Wright**, a leading authority in American jurisprudence, who provides ellucidation and treaties regarding federal rule **§43**, holding: "**[A] leading principle that pervades the entire law of criminal procedure is that after indictment found, nothing shall be done in the absence of prisoner**" at, Alen Wright Fed.R.Cr. Proced. 43 **§721, Vol #3B, 3rd Ed. 2004.** Also quoting the **United States Supreme Court at Lewis v. U.S., 1892, 132 S.Ct. 136, 137, 146 U.S. 370, 372, 36 L.Ed. 1011 (per Shiras, J.).**

Thus for the purpose of **Rule §43**, trial actually begins when the jury is selected, at the stage all the constitutional and statutory protections generally afforded by law must stand to intercede on movant's behalf. **The Virgin Island v. George, CA 3 1982, 690 F.2d 13.**

The government cannot be heard to contend that the failure to allow movant's physical presence at the two sidebars is somehow mitigated or cured by the presence of his trial attorney, nor will the government be able to achieve refuge in an often resorted claim that relies on availability of transcripted sidebar proceedings.

For starters, the right to be present at trial is distinct from movant's constitutionally mandated right to counsel, where the court has observed:

> "[A]lthough the presence of counsel is certainly a relevant factor to be considered in determining whether a defendant's absence was harmless, the right to be present at trial grounded in the confrontation clause and the due process clause is not a gossamer right inevitably swept away simply because a defendant is represented in his absence by counsel. The right to be present is distinct from the right to be represented by counsel, the right to be present would be hollow indeed if it was dependant upon the lack of representation by counsel, it could not be said that there was no reasonable possibility of prejudice and his conviction ... remanded for new trial." United States v. Novaton, CA 11th, 2001, 271 F.3d 968, 999-1000, certirorari denied 123 S.Ct. 193, 537 U.S. 850, 154 L.Ed.2d 80.

The Supreme Court has even gone so far as to recognize that in situations where the defendant is not actually confronting witnesses or evidence against him at trial, the right to be present is an indelible due process right, ruling: **"[T]o be present in his own person whenever his presence has a relation reasonably substantial to the fullness of his opportunity to defend against the charge... to the extent that a fair and just hearing would be thwarted by his absence..."** Kentucky v. Stincer, 482 U.S. 730 at 745, 107 S.Ct. at 105-106, 78 L.Ed. 674, 54 S.Ct. 330, 90 ALR 575 (1934).

Quite naturally it follows that the indelible due process right is violated, where as demonstrated through "transcript of proceedings number two," movant was neither present or allowed opportunity to review contents of discussions which occurred during the second sidebar proceeding, where thus far we are able to ascertain that the subject matter was related to an essential element of the offense, and material evidence, which by all accounts based on the records of the court, involved actual witness testimonies, related to the deliberating jury question as to **failure**

to put on evidence that demonstrate the weight of controlled substances, i.e., crack cocaine.

As to the second of the 'two parts', the failure of trial court to assure transcription of discussions had at the above cited two separate sidebars, runs afoul of precedences provided by the judiciary and legislative proscriptions, which has long mandated that entire proceedings (including sidebars) be transcribed verbatim. **U.S. v. Preciado-Cordobas, 923 F.2d 159 (11th Cir. 1991), U.S. v. Rogers, 853 F.2d 249, cert. denied, 109 S.Ct. 375, 488 U.S. 946, 102 L.Ed.2d 364.** And of course legislative enactments known as the **Court Reporter Act, at 28 U.S.C. §753(b) which declares: "(b) Each session of the court and every other proceeding designated by rule or order of the court or by one of the judges shall be recorded verbatim by shorthand, mechanical means, electronic sound recording, or any other method, subject to the regulations promulgated by the judicial conference and subject to the discretion and approval of the judge... ...Proceedings to be recorded under this section include (1) all proceedings in criminal cases held in open court;"**

The Court Reporter Act has long been cognizable in lower courts where there exist no disagreements as to its authority, holding that the "[C]ourt Reporter Act, 28 U.S.C. §753(b)(1994) requires that court reporters attend at each session of the court and record verbatim all proceedings in criminal cases had in open court. This requirement applies to bench conferences." See **United States v. Winstead, 74 F.3d 1313 (D.C. Cir. 1996).**

<u>PREJUDICE</u>

Movant submits that issues raised herein remain distinguished as being unlike the more typical complaint of trial errors which demonstratively provides for a violation of either; **(1) the defendant's right to be present at proceeding in his criminal trial** or **(2) the trial court's violation of Court Reporter Act of 28 U.S.C. §753, where it failed to transcribe or record sidebars.**

The unique aspect of the two above mentioned constitutional errors, is that they

6

remain inextricably joined, only to occur or manifest at two separate jury instructions, i.e., substantive jury charge at the conclusion of trial, and the supplementary instruction administered in response to jury question (during deliberations), together serving to deny movant a fair trial, including an unobstructed pursuit of appeals and post conviction relief. **United States v. Huggins, 191 F.3d 523, 536 (4th Cir. 1999) cert. denied 529 U.S. 1112 (2000)** citing **Hardy v. United States, 375 U.S. 277, 279 (1964).**

The constitutional errors in their respective individual legal context at one time were considered egregious enough to be treated as structural in nature, requiring automatic reversal (presumed prejudice), i.e., ex parte sidebars, **Feliciano, 223 F.3d 102, 111-12 (2d Cir. 2000);** or even a per se reversal rule, i.e., "Court Reporter Act §753' Carrazano, 70 F.3d 1339, 1342 (D.C. Cir. 1995).** In the face of prevailing law this court will find it objectively unreasonable for trial attorney to forego objections to unrecorded sidebar conferences, relying on previous judicial observations (for prejudice) made at, **U.S. v. Sierra, 981 F.2d 123, 127 [5-7] (3rd Cir. 1992),** where the Third Circuit held, "[T]he nonrecordation of some of the sidebar conferences presents a more difficult issue, we cannot accept the government's argument that the failure to record sidebars is less serious than the failure to record other portions of the trial, such as comments by the judge to the jury. The Court Reporter Act applies to all proceedings in open court, which include sidebar conferences. See **Milan, 910 F.2d at 1559-60;** cf. **United States v. Smith, 787 F.2d 111, 114 (3rd Cir. 1986)**(sidebar is integral part of trial). Instead unrecorded sidebars should be examined for prejudice much as are other missing transcripts. See, e.g., **United States v. Sneed, 527 F.2d 590, 591 (4th Cir. 1975)**(per curiam)(no prejudice); **Edwards v. United States, 374 F.2d 24, 26-27 (10th Cir. 1966)**(same) cert. denied, **389 U.S. 850, 88 S.Ct. 48, 19 L.Ed 120 (1967)."**

The relevant portion of trial transcripts at the substantive jury charge by way of verbatim quotes from page 548, immediately after first sidebar is cited below in

order to convey how and by what means the unrecorded ex parte conference is frought with prejudicial errors such that causes the verdict reached at trial to be one that this court cannot rely upon as having produced a just result.

### IMMEDIATELY AFTER SIDEBAR ONE

The Court: **The government has asked me to indicate a matter concerning conspiracy that I may not have mentioned before. You should not put any special emphasis on these brief sentences that I will read to you. These must be considered along with the lengthy charge that you have already had on conspiracy. I think the point in this charge is ... and I will mention it after I read it ... a person may become a member of a conspiracy without full knowledge of all the details of the unlawful scheme or the names and identities of all other alleged conspirators. So if a defendant has an understanding of the unlawful nature of a plan and knowingly and willfully joins in that plan even on one occasion, that is sufficient to convict him for conspiracy even though he had not participated before and even though he played only a minor role.**

[at page 548, lines 9-25, see, Exhibit Two]

Movant is unable to claim with any degree of certainty the substance of discussions held at unrecorded ex parte, sidebars (conferences), hence what follows as related to the first of two conferences, for the purpose of a prejudicial finding, is intended to be void of speculation and conclusiveness seeking this court's focus on the legal implications that iminate from the **"addition"** to jury charge, which trial judge merely implies was among issues under discussion at sidebar number one.

A part from judge's statement that implied the addition to jury instruction was due to government's request during sidebar. What's missing is the **reason** for the addition, explanation as to **relevance** in light of what had already been administered, and the **cause**, or **why**, i.e., conspiracy language (supplemental).

(1) The nature and context of the addition is inherently prejudicial, as it allows the jury to enter into deliberations on the conspiracy count requiring a reduced burden of proof for the government; particularly where the judge instructs

that a person may become a conspirator without full knowledge of the details of unlawful scheme, or that upon having understanding of details of unlawful nature of a plan, knowingly and willfully, joins it even if on one occasion, such is sufficient even if one had not participated previously. **United States v. Wilson, 133 F.3d 251 (4th Cir. 1997), United States v. Blackman, 839 F.2d 900 (2d Cir. 1988)(retroactive liability illegal in conspiracy).**

(2)  Prejudicial error occurred when the actual offenses and elements charged by indictment versus that given in substantive jury instruction; which includes the mens rea scientor of intentionally and knowingly, other acts or elements of manufacturing, distributing, possession of 50 grams or more of crack cocaine.  Further where substantive offense also charges aiding and abetting.  But the supplemental charge omits, or fails to identify the object of conspiracy by using the noun **'scheme'** such is woefully inadequate and vague, for instructive analysis, see **United States v. Gallerano, 68 F.3d 611 (2d Cir. 1998).**  The similarities within  relevant drug counts including government's incorporation of substantive counts as **overt acts** in conspiracy count, could have caused the deliberating jury to interpret the supplemental charge as reason to conclude **'if he's guilty of conspiracy he's automatically guilty of substantive offense or vise versa."**

(3)  Prejudicial error occurred where the judge's addition to the jury charge provides **mens rea scientor's** as knowingly and willfully, while the actual scientor provided at the conspiracy **Count V**, is **intentionally and knowingly,** the same for the substantive offenses at counts **1, 2,** and **4,** used as overt acts (referenced and incorporated by conspiracy count), **U.S. v. Bancalari, 110 F.3d 1425 (9th Cir. 1997).**  The Third Circuit has long recognized the trial court's **failure to instruct** on scientor such as here [intentionally] to be plain error qualifying for relief.  See **United States v. Retos, 25 F.3d 1220, 1231-32 (3rd Cir. 1994).**

Hence the addition to jury charge by all accounts is prejudicial as it also contradicts clearly established law in the Third Circuit such that sets criteria for

the definition of conspiracy and the means which a jury can infer the existence of one. **United States v. Gibb, 190 F.3d 188, 197 (3rd Cir. 1998), U.S. v. Daniel Presler, 256 F.3d 144 (2001).**

The following quotes are meant in part to provide distinction from other aspects of prejudices that occurred in both substantive and supplementary jury charges, and respective ex parte sidebars. The **following** section (after second sidebar) needs highlighting in order to emphasize its additional aspect of prejudice, i.e., (where the court's advise to the jury exceeds scope of jury's question, and trial counsel recognizing the error but fails to follow through with appropriate comprehensive, cogent motion addressing the point: continuing at page 3, of jury question.

**(An off the record discussion was had at sidebar)**

The Court: I am remined of some of the testimony that you heard, and I will review what I recall as being said... ...But I know that there was reference to people bagging and preparing multiple ounces of cocaine at one time. Somebody referred to a half a kilogram. A kilogram is a thousand grams so if a kilo would be five hundred grams. There was testimony along those lines, but that is for you to recall.

...Thank you. You may continue.

**(The jury retired to deliberate at 3:07 pm)**

The Court: Did counsel wish to place any objection on the record to my remarks?

Mr. O'Connell: For the record, I would like to note an objection that the court's response went beyond the scope of the jury's question. And without reviewing my notes as to the testimony, I am not sure that it is necessarily accurate. I am not saying that it is not accurate, but I preserve that argument.

Mr. Boyle: Your Honor, I would also like to join in that objection.

The Court: Fine. We will be in recess. Thank you. (Whereupon, the portion of transcript requested to be transcribed was concluded). [Available at Exhibit Three]. Also see; **Fed. R. Evid. at 103(b)** Governing preservation of evidentiary objections; and **Fed. R. Crim. P. 30.** Governing preservation of error in court's charge.

Based on the above two portions of supplementary instructions (prior to and after second sidebar), there exist a litany of prejudicial errors all related to court's response to jury's question. Thus argument depicting prejudicial factors relevant on law, are to be found in both portions as they're inseparable when attempting to provide full context, purpose, and meaning to the second sidebar and related prejudices in the absence of record: **The prejudicial errors are as follows**.

(1) The judge's supplemental instructions included analogy to that of "Cleenex box,' 'baseball' or 'Oranges,' in an effort to provide comparison (equate) to **"20 dollar bag and what it weighs,"** i.e., the drugs such amounted to an **"improper methodology"** for the purpose of determining amount of crack cocaine attributable to movant in either conspiracy or substantive offense; prejudice is inherent where possession, distribution, of any three above items is not a crime such that would support rational basis for analogy or whereby there could be any legal foundation to justify comparisons. **U.S. v. Mannino, 212 F.3d 835 (3rd Cir. 2000)**.

(2) The judge's supplemental 'reasonable doubt' instructions at **page 2**, had the effect of reducing government's burden of proof, where trial judge also admonished the jury that they could make a determination for guilt if they found a mere **"five grams;" an offense not charged by the indictment**. See **Beem v. McKume, 278 F.3d 1108 (10th Cir. 2002)**(citing U.S. Supreme Court, substantive due process, miscarriage of justice). All drug counts actually charges **"50 grams or more."** The error herein created a structural defect. See **Arizona v. Fulminante, 499 U.S. 279, 307-10, 111 S.Ct. 1246, 113 L.Ed. 302 (1991)**. Prejudicial showing for structural errors occurring as a result of unconstitutional amendment to the indictment not needed. **United States v. Roshko, 969 F.2d 1 (2d Cir. 1992)**.

(3) The judge's supplemental instructions failed to inform the jury that an **"individual finding"** for the purpose of movant's culpability in either substantive offenses or conspiracy count, as to weight of drugs attributable to him, especially since the jury heard testimony from witnesses that spoke of various drug quantities

11

attributed to **(A)** <u>Harvey</u> <u>Holland</u>, which included a time period outside the scope of the indictment, i.e., (1995), and **(B)** <u>Sean</u> <u>Anderson</u>, the deceased. **United States v. Tucker, 90 F.3d 1135 (6th Cir. 1996), U.S. v. Hansley, 54 F.3d 709 (11th Cir.) cert. denied. 516 U.S. 998 (1995), In Re Sealed Case, 108 F.3d 372 (D.C. Cir. 1997).** Additionally the instruction while referring jury to witness testimony, failed to advise or consider reliability and credibility factors where some witnesses also abused drugs. **United States v. Lee, 68 F.3d 1267 (11th Cir. 1995).**

**(4)** The judge's supplemental instruction given at government's request immediately after second sidebar (page 4, jury question), where he sought to remind jury of testimony related to weight evidence in question.  The reminders amounted to mere **"<u>ipse dixit</u>"** – Joiner, 522 U.S. 136 (1997)(for phrase), as he failed to extrapolate from any transcripts, in itself prejudicial error. **U.S. v. Caldwell, 88 F.3d 522 (8th Cir.), cert. denied, 520 U.S. 1222 (1997).**  The court (judge should have given a <u>yes</u> or <u>no</u> answer to a non-deadlocked jury question, rather than refer them to witness testimony off the whim, a failure to rely on accurate verbatim record. **United States v. Manning, 79 F.3d 212 (1st Cir.), cert. denied, 519 U.S. 853 (1996)(prejdicial error).**

**(5)** The judge's supplemental instruction in response to jury's question where the judge acknowledged the government's failure to prove the essential element of weight, failed to direct the jury verdict for acquittal on related counts, but to the contrary the judge's referring jury to previous testimony without any specific guidance in the record, for individual finding, had the effect of directing a verdict against movant, inherently prejudicial, due process. **Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).**  It was plain error for the judge to submit counts of the indictment that relied on essential element of weight, to the jury for deliberation, where even during his substantive jury charge (page 550), the judge advised the jury ...."We didn't get any testimony about weight"...., i.e., weight of controlled substances. **See United States v. Golomb, 811 F.2d 787, 793 (2d Cir. 1987).**

## LEGAL CAVEAT

## Effectiveness Of Counsel's Arguments Impaired

Movant was prejudiced when the court through its supplementary instruction omitted the scientor element of intentionally, and charged the element as to the weight of controlled substance offenses by informing jury for the purpose of its reasonable doubt findings, it only had to find defendant distributed or possessed **5 grams**, instead of the charged amount of 50 grams or more. Trial counsel's effectiveness through arguments at trial were impaired, as a result of the sudden change in jury charge, occurring after defense counsel has long concluded its case. **United States v. Harvill, 501 F.2d 295 (1974)(another Rule 30 violation).**

*   *   *   *   *   *

It's critical to note with regards to prejudicial findings as related to both unrecorded ex parte sidebar conferences, and related supplementary instructions, with particular focus on that administered in response to jury's question, where there exist an additional departure from procedural norms (legal rules), designed to protect the accused from prejudicial errors, and to assure a fair trial.

That is through judicial gatekeeping, even in the absence of counsel's motion pursuant to **Fed. R. Crim. P. 30**; once the court becomes aware of the need or at the behest of either party. The court in the absence of jury should have bought to the attention of counsel on the record (transcribed) the full details of intended supplementary instruction, thus affording an opportunity for objections outside the hearing and view of the jury. See **Hamling v. United States, 1974, 94 S.Ct. 2887, 2916, 418 U.S. 87, 134, 41 L.Ed.2d 590 (per Rehnquist, J.), construing Fed. R. Crim. P. 30.** Also see **Fed. R. Civ. P. 51. "The rule is designed to avoid the subtle psychological pressures upon the jurors which would arise if they were to view and hear defense counsel in a posture of antagonism toward the judge."**

Therefore if the government had any objections to jury charge (as the record demonstrates on two separate occasions) the ensuing ex parte esidebars which resulted in substantial prejudice to movant was not the best legal forum to iron out those

those legal differences, such that involves multiple defendants (coconspirators) and their respective liberty interest, this includes conflicting ideas on legal principles, like that related to supplementary charge on conspiracy count of the indictment, or the supplemental charge that goes to jury's question related to material evidence, i.e., where the court attempts at referring jury to witness testimony without consulting the record (weight question). All such is improper and in the absence of record (nonrecordation **id., at 127 [5-7], Sierra**) it's impossible to determine the "posture" of trial counsel during related sidebar conferences.

Through judicial gatekeeping and its supervisory authority the court should have ordered an **instruction objection conference**, cognizable in this court at **U.S. v. Currens, CA 3d 1961, 290 F.2d 751**, the conference was warranted given the inherent complications defined above, also see **Charles Alen Wright, 3d 2004, F.R. Cr. Pro. 30 §484**.

* * * * * *

Cumulatively or otherwise the foregoing errors at their enumerated points can be best described as <u>judicial</u> <u>error</u> as per the instructional ambush, where the court is required to inform in advance of its intended charge, such should be apparent in the record. **See United States v. Gaskin, 849 F.2d 454 (9th Cir. 1988).**

Relying on precedent in reaching a determination for prejudicial errors, this court may consider the **"absence or presence of new counsel or the same counsel on appeal"** as a significant factor, **id., at 981 F.2d 126 [3]** citing (Antoine, 906 F.2d at 1381). At direct appeal movant was represented by different counsel from trial attorney (Mr. O'Connell), that being attorney **Lemora M. Smith**, see page III, **"Appeal Statement."**

An evidentiary hearing is necessary in order to complete a prejudicial determination when habeas court is confronted with the foregoing type of issues and errors under complaint. **See Burson v. Engle, 432 F.Supp. 929, 932 [6] 1977, citing Alen Wright, Gypsom Co., 438 U.S. 422 (1978)** <u>prejudice</u> <u>presumed</u>.

Equally germane to silence of the record (§753 violation) is counsel's failure to be heard, prior to, during, or after sidebars where there exist no apparent effort to challenge the unrecorded nature of ex parte sidebars, or government's request, as part of the adversarial process, amounting to passivity and ineptitude. **Lindstadt v. Keane, 239 F.3d 191, 205 (2nd Cir. 2001)**, such lacking in argument during critical stages is tantamount to counsel's very absence. **Tippins v. Walker, 77 F.3d 682 (2nd Cir. 1996)**.

Therefore, trial counsel failed to preserve any of the foregone errors for direct appeal, where there is a likelihood the entire matter would have received appropriate relief. **Government of Virgin Island v. Forte, 865 F.2d 59 at 64 (4-5)(3rd Cir. 1989)**.

Wherefore, movant seeks vacature of sentence and conviction or whatever relief this court deems necessary.

## GROUND TWO

**The Trial Attorney Was Unconstitutionally Ineffective Where The Government Relied Upon Coconspirators Guilty Pleas As Substantive Proof Of Movant's Complicity In Conspiracy Whereby, Counsel Failed To Object, Or Request A Limiting Instruction, In Violation Of Due Process Guaranteed, I.E., 5th Amendment, U.S.C. Movant Was Prejudiced And Appellate Counsel Was Unconstitutionally Ineffective For Failure To Raise Issue In Appeals Court.**

Movant hereby set forth below a number of quotes from a portion of trial transcripts which serves to demonstrate a number of substantive errors committed by the government in its presentation of evidence, the onus of which is to be shared with defense counsel for his failures to object, and or seek a limiting jury instruction.

## THE FACTS

The following represents opening arguments to the jury and court by the attorney for the government Mr. William A. Behe (A.U.S.A.), where he informs the jury of witnesses, who are coconspirators/codefendants of movant, charged in the indictment and has entered into plea agreements with the government (plead guilty):

**Pages 14-15, Lines 22-25, and 1-7,**

Line 22 - "You'll hear from witnesses who are codefendants who have pleading guilty, particularly Anthony Braxton who was also charged as conconspirator who has plead guilty, admitted his involvement with these defendants and is prepared to testify."

"Defendant Jeffrey Holland's girlfriend, the mother of his child, has plead guilty and is going to testify here against him as will others. You heard the names, witness after witness who will come into court and testify about what they know about these individuals involved." [End at line 7, page 15].

What follows is quotes from passages of transcript at direct examinations of both witnesses, conconspirators, in their respective orders Ms. Posey (page 173, lines 5-21, of trial transcripts) and Mr. Braxton (page 221-223, line 4).

### Direct Examination (Ms. Posey)

Line 5 - "Ma' am, you were yourself charged for being involved in the drug trafficking activity that was going on here in Harrisburg involving Jeffrey and Harvey and Shawn Anderson and Braxton, is that correct?"

Line 9 - "Yes."

Line 10 - "And you have pled guilty herein this courtroom to a charge of what, using a telephone to promote drug trafficking?"

Line 13 - "Soliciting over the telephone."

Q.   "You face a potential term of imprisonment of up to four years, is that correct?"

A.   "Yes."

Q.   "You have been in jail for how long, ma'am?"

A.   "Almost a year."

Q.   "You are over at the Cumberland County prison, is that correct?"

A.   "Yes." [end at page 173 line 21].

### Direct Examination (Mr. Braxton) page 221

Line 20 -   Q.   "Was there a point in time when you were charged for your involvement in distributing drugs along with these defendants?"

16

A.  "Yes, I was in a conspiracy."

Q.  "There was a point in time where you were incarcerated in York County prison?"

(end at line 25)

A.  "Yes, I was from May 14th to December 26th."

Q.  "Of 2001?"

A.  "Yes."

Q.  "Had you plead guilty at that time?"

A.  "Had I plead guilty?"

Q.  "Yes."

A.  "Not at the time when I got the — did I?  No, not at the time when I got the letter, no."

Q.  "Have you since pled guilty?"

A.  "Yes, I have."

Q.  "You have signed a plea agreement obligating you to cooperate; is that correct?"

A.  "Yes, with truthful testimony."

Q.  "Now you are facing a maximum term of imprisonment of ten years is that correct?"

[continued on page 223, line 2]

A.  "Yes, I am."

Q.  "Pardon me?"

A.  "Yes, I am."

[line 4 pages 223]

Demonstratively, the foregoing quotations from direct examination of movant's alleged conconspirators, depicts an exacting effort on part of the A.U.S.A., who during opening statements to the jury promised to advance as evidence the coconspirators guilty pleas as substantive proof of [movant's] complicity in conspiracy.

17

## THE LAW

As claimed it was error for the A.U.S.A. Mr. Behe, to make reference to coconspirators guilty pleas as **substantive proof** of movant's complicity on conspiracy, whereby the jury could infer that the defendant (movant) too must be guilty. **U.S. v. Universal Rehabilitation Services Inc., 167 F.3d 171 (3rd Cir. 1999).**

Where case precedent on occasion has addressed this very legal scenario via state habeas petition pursuant to $2254, for due process violation under the 14th Amendment. It must follow that the appropriate constitutional amendment involved is the **5th Amendment** U.S.C. for due process violation occurring in federal trial court. **See Caldwell v. Miller, 790 F.2d 589** (federal liberty interest verses state).

Hence movant provides as the single precedent authority by which his case is reasonably analogous, causing that the current habeas court albeit, through $2255, may examine claim for errors and apply the "Strickland standard" for the purpose of effecting relief.

The Third Circuit Court of Appeals at its authority **Bisaccia v. Attorney General of State of N.J., 623 F.2d 307 (1980)**, has long recognized the above mentioned errors to constitute a denial of fair trial in violation of due process guarantees; where it declared: "[F]rom the common sense point of view a plea of guilty by an alleged fellow conspirator is highly relevant upon the question of the guilt of another alleged conspirator. If **A's** admission that he conspired with **B** is believed, it is pretty hard to avoid the conclusion that **B** must have conspired with **A**. This one of the cases, therefore, where evidence logically probative is to be excluded because of some countervailing policy. There are many such instances in the law. See 4 **Wigmore Evidence §1171 et seq., (3d Ed. 1940)** id., at 312. "[I]t is patently unfair to subject a defendant to criminal sanctions merely because his alleged coconspirator[s] has not elected to stand trial. In effect, the guilty plea evidence cannot be introduced because its relevance is far outweighed by its potential prejudicial impact upon the jurors **deliberations**." Id. at 311.

"[D]ue process of law, as a historical and generative principle, precludes defining, and thereby confining, these standards of conduct more precisely than to say that convictions cannot be brought about by methods that offend "a sense of justice." **Rochin v. California, 342 U.S. 165, 173, 72 S.Ct. 205, 210, 96 L.Ed. 183 (1952)."** Id. at 311.

Then further; "[I]t is well settled in this circuit that use of a coconspirators guilty plea as substantive proof of a defendants complicity in a conspiracy without cautionary instruction is not admissible as evidence. **United States v. Toner, 173 F.2d 140, 142 (3rd Cir. 1949)."** Id. at 312.

Therefore, the antecedent authorities in this circuit remains consistant with contemporary law in other jurisdictions, where a limiting instruction (caustionary instruction) is found to be a mitigating factor which can prevent or reduce the potential for prejudice to the accused (movant). **U.S. v. Ramirez, 973 F.2d 102 (2nd Cir. 1992).**

However courts have even found the above reasoning applicable as sufficient reason in order to reverse convictions in nonconspiracy situations, i.e., where the government used codefendants admission of guilt as substantive proof in order to secure conviction, see **U.S. v. Prawl, 168 F.3d 622 (2nd Cir. 1999).**

Thus it becomes absolutely unreasonable in the face of such historial authority which serves as foundation for current procedural norms, when trial counsel fails to object to the error, or seek a limiting instruction, in order to secure movant's liberty interest or advocate his constitutional guarantees. See **U.S. v. Pierce, 959 F.2d 1297 at 1304 (9, 10](5th Cir. 1992)(for limiting instructions and ineffective assistance of counsel).**

## PREJUDICE

As noted at **Bisaccia**, critical to this court's prejudicial finding is how the government's use of movant's coconspirators guilty pleas in evidence as substantive proof of his guilt, is its "impact" upon the jury particularly in relations to their

"deliberation" process. **Id. at 311.**

It was during the course of its short deliberations that they jury actually submitted a note, as **question #2,** wherein they asked **"[C]an we see a copy of all plea agreements?"** the judge wrote back **"Yes."** (June 6th 2002).

That the jury having to receive in evidence during trial movant's coconspirators guilty pleas, then to be allowed additional ponderence on those pleas as proof of movant's guilt, while in deliberations unsupervised, was akin to listening to coconspirators twice, and further without any cautionary instructions. Such a situation could have allowed the jury to give greater or disproportionate consideration to the guilty pleas as substantive proof of movant's guilt on all relevant controlled substance counts in the indictment (again no limiting instruction). Furthermore, the court's in this type of legal scenario with regards to **jury's re-reading of [guilty pleas] during its deliberations** (obviously) while defendant is not present, should abstain from such a practice. Particularly where the record does not demonstrate trial counsel's consent, and even then, the right could not be waived by counsel, i.e., in response to jury's note #2. **See U.S. v. Felix-Rodriguez, CA 9th, 1994, 22 F.3d 964 (for instructive analysis). See Exhibit Four, for copy of transcripts containing government's arguments (opening), testimony of coconspirators Ms. Posey, and Mr. Braxton, jury note, in support of arguments.**

Conclusion, should this court not be satisfied by way of a showing that errors are of constitutional dimension, (due process, effective assistance of counsel 5th, 6th U.S.C.A.) and that prejudice exist or must be presumed, the court must agree that an evidentiary hearing will be necessary in order to properly evaluate counsel's failure to object and seek a limiting instruction, see **Chapman v. California, 1967, 87 S.Ct. 824, 837, 386 U.S. 18, 42, 17 L.Ed.2d 705. Gibbs, Prejudicial Error: Admission And Exclusions Of Evidence In The Federal Courts, 1957, 3 Will. L. Rev. 48, 67.** Further at **Vol 3B, Charles A. Wright, Federal Practice & Procedure §855 (3rd Ed. 2004)** for prejudicial determinations.

Appellate counsel was also unconstitutionally ineffective **Sixth Amendment U.S.C.** for his failure to investigate the trial record, recognize errors, and raise them in the formal appeals brief or his failure to raise trial counsel's ineffectiveness in appeals court. **Lombard v. Lynough, 868 F.2d 1475 (5th Cir. 1989).**

Wherefore, movant seeks this court to enter an order for the vacature of conviction and or his sentence, otherwise to provide relief by whatever means this court deems necessary.

### GROUND THREE

**The Trial Attorney Was Unconstitutionally Ineffective For His Failure To Object To Errors And Seek Cautionary Instructions, When The Judge Committed Jury "Verdict Coercion," As Part Of Its Substantive, And Supplementary Jury Charge, In Violation Of Movant's Due Process Guarantees (5th Amendment U.S.C.), And Appellate Counsel Was Ineffective For His Failure To Raise In Its Entirety, Jury Verdict Coercion Question In The Court Of Appeals.**

The following represents an ineffective counsel claim as against both trial and appellate counsels **(6th U.S.C.A.)**, where counsel failed to object on the records, and seek cautionary instructions when the court committed trial errors by means of **jury verdict coercion** in its substantive and supplementary jury charges, i.e, **(1) threats and intimidation, (2) coercive language, (3) time pressures**, thereby causing the jury to render an expedited guilty verdict; a denial of movant's due process guarantees **(5th U.S.C.A.)**.

### THE FACTS AND THE LAW

That based on the gramatical syntax, and complete context of the judges advise to the jury, given in the following paragraph, taken from the "substantive jury charge" of the court, where the judge states: **"[A]t this point, you may now retire and begin your deliberations. I believe lunch will be served to you soon. We will be ready to receive your verdict this afternoon when you reach it. We will remain in session, please."** Id., at page 553, lines 15-18.

Although subtle it becomes clear that the judge's intentions at the very outset was to achieve a verdict that very day, such becomes obvious when combining the above

21

instruction with that given in the supplementary charge: "[N]aturally, we are hopeful that a verdict can be reached in this case, but we don't want anybody to reach a verdict just for the sake of reaching a verdict. If the case is not resolved today, it will have to be tried by another jury at a later time." See "Transcript of proceedings - Jury Question June 6, 2002, page 3, lines 4-8.

It is corroborative evidence, when combining the expression "this afternoon" (at substantive charge) with that of "resolved today" (at supplementary charge); that the judge sought to exert time pressures on the jury prior to and subsequent to first deliberations period. The court (judge), is forbidden by law from placing on the jury any explicit time constraints thereby seeking to induce a verdict more swiftly than the ends of justice will allow. United States v. Diharce-Estrada, 526 F.2d 637, 640 (5th Cir. 1976).

In the same paragraph there also exist a disingenuous act on part of the court where trial judge erroneously admonishes the jury through what can be interpreted as threat and intimidation, where the judge states "[I]f the case is not resolved today it will have to be tried by another jury at a later time." Id. at line 8.

This type of threat and intimidation can cause any single juror to feel as if he/she, is delaying the cause of justice, and thus vote with others in order to avert the pending collective punishment. See Jenkins v. United States, 380 U.S. 445, 446 (1965).

The idea or threat of replacement is a real fear for a juror, as it was previously acknowledged by the court when the judge informed the alternate jurors as follows: "[I] am sure it is somewhat disturbing to you that you have been here for four days, and now you are not going to get to deliberate with the other jurors, id. at page 552 (charge of the court) 3-6. Thus movant's claims herein is no mere speculation as replacement is viewed by the court objectively as "disturbing."[1]

---

1. All relevant quotes used herein are available at transcripts in Exhibit Five

## PREJUDICE

By this point there should be no doubt as to whether the court's conduct resulted in jury verdict coercion, by way of threats and intimidation, coercive language, and time pressures (contraints). Nevertheless, the trial record bears out that trial counsel performed no actions indicative of objection to such judicial conduct in movant's liberty interest.

Counsel was also ineffective to the point of substantial prejudice toward movant by his failure to seek cautionary instructions, especially when the court used **"coercive languages"** on the jury as part of his supplementary charge. A cautionary instruction in light of the circumstances would have protected the trial proceedings from the spector or taint of verdict coercion, where at a minimum by law it is required to admonish (inform) the jury **"not to surrender their conscientiously held beliefs."** The defaulted cautionary instruction is particularly important where the judge's supplementary charge of which was related to **evidence**. **Lowenfield v. Phelps, 484 U.S. 231, 235 (1988)(internal quotations omitted).**

In light of all the above, including the least considered fact that the jury wasn't even deadlocked, which is known to trigger stearness or "Alen" type charges from judges after substantial delay at verdict. Reasonable jurist has agreed that the foregoing occurrence at trial smacks of jury verdict coercion. **Smalls v. Batista, 191 F.3d 272, 283 (2d Cir. 1999)** of which prejudice clearly exist.

## LEGAL CAVEAT

Another prejudicial factor pregnant in the judge's admonishment to the jury where he states **"If the case is not resolved today it will have to be tried by another jury at a later time,"** is that a double jeopardy claim would develop if the judge was to declare a mistrial prematurely. **Arizona v. Washington, 434 U.S. 497 (1978), Logan v. U.S., 144 U.S. 263 (1892).**

Could the trial court not have known this? The implications here is that if the jury had deliberated beyond its **prescribed time constraint (per the above**

quote), the court would have ordered a mistrial; however, movant would have been estopped (barred) from a second trial (per the above authorities), protected by double jeopardy law; **hence a genuine liberty question.**

Prejudice is presumed here, and both trial and appeals counsels were unconstitutionally ineffective respectively for both failure to object, preserve errors and raise issue in appeals court. **Pierce, 959 F.2d 1297 at 1304 [9, 10](5th Cir. 1992), Lombard v. Lynough, 868 F.2d 1475 (5th Cir. 1989).**

And further, trial counsels unprofessional errors as argued in all issues enumerated herein, including his omissions must be considered in light of totality of the circumstances. In other words, the prejudicial effect must be considered together. **Arrowood v. Clusen, 732 F.2d 1364 (7th Cir. 1984), and Goodwin v. Balkom, 684 F.2d 794 (11th Cir. 1982).**

Wherefore, movant seeks vacature of his conviction and or sentence, otherwise the court may provide relief by whatever means is deems necessary.

## CERTIFICATE OF SERVICE

I **hereby certify**, that a true and correct copy of movant's motion filed pursuant to **28 U.S.C. §2255**, sworn affidavit in support thereof, motion for appointment of counsel, and order for show of cause as to why relief sought should not be granted which includes respondent's failure to address any issue raised shall be treated as conceding the issue, pursuant to **Fed. R. Civ. P. 8(d)**, four exhibits attached – has been mailed to William A. Behe, Assistant United States Attorney, Thomas A. Marino, United States Attorney, Federal Building, 228 Walnut Street, Harrisburg, Pennsylvania 17108, (717) 221-4482, by depositing same in prison mailbox at U.S.P. Lee County, (institution).

Jeffrey Holland    1·30·05

Jeffrey Holland
Reg. No. 36909-083
U.S.P. Lee County
P.O. Box 305
Jonesville, VA 24263

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

JEFFREY HOLLAND,

        Movant,

    v.                             Case No. 1:01-CR-195-02, 06

UNITED STATES OF AMERICA,

        Respondent.

_____/

---

**AFFIDAVIT IN SUPPORT OF MOTION FILED PURSUANT TO
28 U.S.C. §2255 SWORN UNDER THE PENALTY OF PERJURY
PURSUANT TO 28 U.S.C. §1746(2) IN THE ABSENCE OF
NOTARY**

---

I, Jeffrey Holland, the moving party and affiant herein, hereby state and affirm under the penalty of perjury pursuant to **28 U.S.C. §1746(2)**:

(1)  Nonrecordation of ex parte sidebars; violation of 6th U.S.C.A. confrontation clause, 5th U.S.C.A. due process, F.R.Cr. P. 43 (right to be present), Court Reporter Act 28 U.S.C. §753.

(2)  Use of coconspirators guilty pleas as substantive proof (in evidence) of movant's guilt in all controlled substance offenses charged; violated due process guarantees, 5th U.S.C.A.

(3)  Jury verdict coercion, was per court's substantive and supplementary jury instruction, in violation of due process guarantees 5th U.S.C.A.

All issues as listed above are supported by exhibits 1-4, e.g., the foregoing issues are raised under ineffective assistance of trial and appeals counsels, i.e., **(A)** failure to object and seek cautionary, limiting instructions (prejudicial errors) and **(B)** failure to investigate record, raise in appeals briefing, **6th U.S.C.A.**  All being constitutional claims of errors, that goes to independent constitutional claims.  **Edwards v. Carpenter,** 529 U.S. 446, 146 L.Ed.2d 518, 120 S.Ct. ___ (2003).

That the issues of fact supported by law with the memorandum of law attached to motion raised in the foregoing motion filed pursuant to 28 U.S.C. §2255, filed in a timely matter, and are enumerated herein above, **are true and correct.**

_Jeff Holland_    1 30 05

**Jeffrey Holland**
**Reg. No. 36909-083**
**U.S.P. Lee County**
**P.O. Box 305**
**Jonesville, VA 24263**

**\*Please see motion for appointment of counsel and show of cause order (request).**

2

IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

JEFFREY HOLLAND,

          Movant,

    v.

UNITED STATES OF AMERICA,

         Respondent.

_____/

Case No. 1:01-CR-195-02, 06

## MOTION FOR APPOINTMENT OF COUNSEL

   **Now onto court** comes Jeffrey Holland, the petitioner, appearing through pro se representation and respectfully moves this Honorable Court to appoint counsel for the purpose of representing the petitioner's motion filed pursuant to **28 U.S.C. §2255 (post-conviction relief)** seeking vacature of conviction and or sentence, **pursuant to Title 18 U.S.C. §3006A. Richardson v. Miller, 721 F.Supp. 1087 (W.D. Mo. 1989).**

   Wherefore, the petitioner Jeffrey Holland, prays this Honorable Court will appoint counsel to represent him in the above action.

                           Respectfully Submitted,

                           *Jeffrey Holland*     1 30 05
                           Jeffrey Holland, movant
                           Reg. No. 36909-083
                           U.S.P. Lee County
                           P.O. Box 305
                           Jonesville, VA 24263

1    distribute or conspiracy to do the same, you will be asked to

2    determine, if you can, the amount of drugs with which each

3    was involved.

4         The government has the burden of proving drug

5    quantities by proof beyond a reasonable doubt as I have

6    already explained that term.  You must be unanimous in your

7    decision on this point.  Of course, the term quantity means

8    weight.

9         In determining the amount of drugs involved in

10   these crimes should you so find a defendant responsible, you

11   must indicate the amounts on a verdict form that I will

12   supply to you.  And you will be asked to determine beyond a

13   reasonable doubt the quantity involved in the particular

14   count.

15        The quantity of cocaine categories that we deal

16   with in these cases are fifty grams or more, five grams or

17   more but less than fifty grams, or less than five grams.

18   There are three categories that you can fit into there.

19        That includes the substance of my Charge.

20   Gentlemen, is the government satisfied?

21        MR. BEHE:  Your Honor, may we approach on a

22   matter?

23        THE COURT:  Yes.  Sure.

24        THE COURT:  Is the defense satisfied?  Let me ask

25   that question.

Charge of the Court

1    MR. O'CONNELL:  If we are waiting to approach, I

2    will make my --

3         THE COURT:  Fine.  Excuse us for just a moment.

4         (An off-the-record discussion was had at sidebar.)

5         THE COURT:  I have asked my Courtroom Deputy to

6    pass out the verdict forms.  I would appreciate if you put

7    them down for a minute because we are going to get to them in

8    just a second, but I do want to say something in addition.

9         The government has asked me to indicate a matter

10   concerning conspiracy that I may not have mentioned before.

11   You should not put any special emphasis on these brief

12   sentences that I will read to you.  These must be considered

13   along with the lengthy Charge that you have already had on

14   conspiracy.

15        I think the point in this Charge is -- and I will

16   mention it after I read it -- a person may become a member of

17   a conspiracy without full knowledge of all of the details of

18   the unlawful scheme or the names and identities of all the

19   other alleged conspirators.

20        So if a defendant has an understanding of the

21   unlawful nature of a plan and knowingly and willfully joins

22   in that plan even on one occasion, that is sufficient to

23   convict him for conspiracy even though he had not

24   participated before and even though he played only a minor

25   role.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          :
                                  :
                    v.            :
JEFFREY HOLLAND and               : 1:01-CR-195-02
HARVEY HOLLAND,                   : 1:01-CR-195-06
                 Defendants       :


TRANSCRIPT OF PROCEEDINGS

JURY QUESTION


BEFORE:   HON. WILLIAM W. CALDWELL, Judge

DATE:     June 6, 2002

PLACE:    Courtroom Number One
          Federal Building
          Harrisburg, Pennsylvania


COUNSEL PRESENT:
WILLIAM A. BEHE, Assistant United States Attorney
     For - United States of America

TIMOTHY O'CONNELL, Esquire
     For - Defendant Jeffrey Holland

DENNIS BOYLE, Esquire
     For - Defendant Harvey Holland


                              Vicki L. Fox, RMR
                              Official Reporter

2

1       ( The jury has a question at 3:00 PM.).

2       THE COURT:  Folks, we have the question that you

3   asked about the 20 dollar bag and what it weighs; is that

4   correct?  And you indicate that you have no reference to

5   determine weight, no direct testimony as to the specific

6   weight amounts, etcetera.

7       There was no testimony on this point.  I can agree

8   with that.  There was testimony, however, about quantity

9   depending on what you believe, not necessarily weights)  One

10  person described something as big as a box of Kleenex.

11  Another person described some cocaine as maybe the size of a

12  baseball or orange or something I remember.  That is the only

13  testimony that would enable you to come to some conclusion

14  about weight.

15      I did indicate to you I believe that fifty grams

16  weighs an ounce and a half.  You will have to determine, if

17  you can, whether or not the government has proved beyond a

18  reasonable doubt that fifty grams or more, or five or under

19  five grams was distributed.

20      If you find that it was distributed, there was no

21  testimony as to what a bag -- a twenty dollar bag weighs.  We

22  cannot supplement the record at this point with additional

23  evidence.  That is just something that we cannot provide for

24  you.

25      So all I can say is we can't answer that question

3

1   because it isn't in the record, and we can't now add evidence

2   that was not presented during the trial.  So you will just

3   have to do your best with the evidence that you heard.

4           Naturally, we are hopeful that a verdict can be

5   reached in this case, but we don't want anybody to reach a

6   verdict just for the sake of reaching a verdict.  If the case

7   is not resolved today, it will have to be tried by another

8   jury at a later time.

9           That is no reason for you not to stick by your

10  guns if you can't resolve the case, but that is what would

11  happen if we don't arrive at a verdict.  I don't want to

12  let -- don't let me influence you in making a decision for

13  that reason.  I think that is just something that everybody

14  knows, and I thought I should convey to you.

15          That is as much as we can do I think so we will

16  ask you to retire unless you have further questions or

17  comments at this point.

18          MR. BEHE:  Your Honor, before we retire, may we

19  speak at sidebar?

20          THE COURT:  Sure.

21          (An off-the-record discussion was had at sidebar.)

22          THE COURT:  I am reminded of some of the testimony

23  that you heard, and I will review what I recall as being

24  said.  But when I do, I do not want you to have the

25  impression that I am crediting that testimony.  That is for

JURY QUESTION # 4

1: CR-01-195-02 + 06

#4

How much crack (weight)
is in a $20.00 bag?

FILED
HARRISBURG, PA

JUN 6 2002

MARY E. D'ANDREA, CLERK
Per _____

We have no reference to
determine weight. No direct
testimony/evidence as to specific
weight, amounts, etc.

Charge of the Court

1    MR. O'CONNELL:  If we are waiting to approach, I

2    will make my --

3        THE COURT:  Fine.  Excuse us for just a moment.

4        (An off-the-record discussion was had at sidebar.)

5        THE COURT:  I have asked my Courtroom Deputy to

6    pass out the verdict forms.  I would appreciate if you put

7    them down for a minute because we are going to get to them in

8    just a second, but I do want to say something in addition.

9        The government has asked me to indicate a matter

10   concerning conspiracy that I may not have mentioned before.

11   You should not put any special emphasis on these brief

12   sentences that I will read to you.  These must be considered

13   along with the lengthy Charge that you have already had on

14   conspiracy.

15       I think the point in this Charge is -- and I will

16   mention it after I read it -- a person may become a member of

17   a conspiracy without full knowledge of all of the details of

18   the unlawful scheme or the names and identities of all the

19   other alleged conspirators.

20       So if a defendant has an understanding of the

21   unlawful nature of a plan and knowingly and willfully joins

22   in that plan even on one occasion, that is sufficient to

23   convict him for conspiracy even though he had not

24   participated before and even though he played only a minor

25   role.

3

1    because it isn't in the record, and we can't now add evidence

2    that was not presented during the trial.  So you will just

3    have to do your best with the evidence that you heard.

4         Naturally, we are hopeful that a verdict can be

5    reached in this case, but we don't want anybody to reach a

6    verdict just for the sake of reaching a verdict.  If the case

7    is not resolved today, it will have to be tried by another

8    jury at a later time.

9         That is no reason for you not to stick by your

10   guns if you can't resolve the case, but that is what would

11   happen if we don't arrive at a verdict.  I don't want to

12   let -- don't let me influence you in making a decision for

13   that reason.  I think that is just something that everybody

14   knows, and I thought I should convey to you.

15        That is as much as we can do I think so we will

16   ask you to retire unless you have further questions or

17   comments at this point.

18        MR. BEHE:  Your Honor, before we retire, may we

19   speak at sidebar?

20        THE COURT:  Sure.

21        (An off-the-record discussion was had at sidebar.)

22        THE COURT:  I am reminded of some of the testimony

23   that you heard, and I will review what I recall as being

24   said.  But when I do, I do not want you to have the

25   impression that I am crediting that testimony.  That is for

X-3

1  you to decide whether you believe the witnesses and so

2  forth.

3             But I know that there was reference to people

4  bagging and preparing multiple ounces of cocaine at one

5  time.  Somebody referred to a half a kilogram.  A kilogram is

6  a thousand grams.  So half a kilo would be five hundred

7  grams.  There was testimony along those lines, but that is

8  for you to recall.

9             And, of course, in addition to recalling it, you

10 have to judge the credibility of that testimony that was

11 given.

12            By mentioning that to you, I don't want you to

13 overemphasize what I have just reviewed.  That is just going

14 to be part of the overall evidence that you are considering

15 as you reach your verdict.

16            So don't credit what I am saying as something

17 special.  I am just trying to help you by reminding you in a

18 general way of a few of the things that I heard, that might go

19 to weight if you accepted it and believed it and so forth.

20            Okay.  That is as much as we can do.  Thank you.

21 You may continue.

22            (The jury retires to deliberate at 3:07 pm.)

23            THE COURT:  Did counsel wish to place any

24 objection on the record to my remarks?

25            MR. O'CONNELL:  For the record, I would like to

14

1          Because as the investigators stepped back

2    and tried to determine who committed this horrible

3    crime in Susquehanna Township, they tried to think,

4    who would hate somebody so much or have so much

5    against an individual that it would take three

6    individuals to fire 25 rounds to try and kill someone?

7    And that took them to the drug scene.

8          And you are going to hear, I submit to you,

9    testimony about a world that you just can't imagine

10   exists and goes on every day in the community under --

11   or in front of our eyes, in the different areas where

12   we live.  You may read about it, but you're going to

13   hear about it from the witnesses who know these two

14   defendants, who know Shawn Anderson.

15          And we'll talk about their drug dealings

16   over several years, trips to New York to pick up crack

17   cocaine from a Hispanic individual that they bring

18   back for distribution, individuals who bought directly

19   from Defendant Jeffrey Holland here multiple times

20   over the period of the time charged in this indictment

21   for these individuals.

22          You'll hear from witnesses who are

23   co-defendants who have pled guilty, particularly

24   Anthony Braxton, who was also charged as a

25   co-conspirator who has pled guilty, admitted his

15

1   involvement with these defendants and is prepared to

2   testify.  Defendant Jeffrey Holland's girlfriend, the

3   mother of his child, has pled guilty and is going to

4   testify here against him, as will others.  You heard

5   the names, witness after witness who will come into

6   court and testify about what they know about these

7   individuals involved.

8         I submit to you when you hear the evidence

9   about the drug trafficking, what you'll see is that

10   Jeffrey Holland and Shawn Anderson were pretty much

11   running the show.  They were moving a lot of crack

12   cocaine, multiple-ounce quantities at particular

13   periods of time, over a substantial period of time,

14   possessing firearms during this period of time.

15         As a matter of fact, one witness is going to

16   come in and testify about her dealings with Jeffrey

17   Holland and Shawn Anderson, how she traded sex for

18   crack cocaine and on occasions would buy the crack

19   cocaine and how she traded a firearm to this defendant

20   in exchange for money and crack cocaine.  Others will

21   testify similarly.  Kechia Holmes will come in and

22   testify how she also, as a crack cocaine addict, found

23   herself not only buying crack cocaine from this

24   defendant, but exchanging sex for crack cocaine, as

25   well.

Posey - Direct

had to say?

A    He was just like I fucked up.  He was saying that

Mr. Harrigan would still be alive if he hadn't tried to kill

his uncle.

Q    Ma'am, you were yourself charged for being involved in

the drug trafficking activity that was going on here in

Harrisburg involving Jeffrey and Harvey and Shawn Anderson

and Braxton; is that correct?

A    Yes.

Q    And you have pled guilty here in this courtroom to a

charge of what, using a telephone to promote drug

trafficking?

A    Soliciting over the telephone.

Q    You face a potential term of imprisonment of up to four

years; is that correct?

A    Yes.

Q    You have been in jail for how long, ma'am?

A    Almost a year.

Q    You are over at the Cumberland County Prison; is that

correct?

A    Yes.

Q    While you were at the Cumberland County Prison, do you

recall receiving a letter that was sent to you by the

defendant Jeffrey Holland?

A    I never received the letter.  It was interfered.

Braxton - Direct

1    girlfriend's house and was telling him about the argument me

2    and him had had.

3            At the time, Sharonda had put Jeffrey out of the

4    apartment. And in the course of helping him get out faster,

5    she said hurry up and get the F out of my house before I call

6    the Police and tell them you killed the boy -- that you

7    murdered the boy at Camelot.

8            So in return, I am standing there talking to him.

9    I said oh, so he was wasn't lying about that.  Harvey Holland

10   says yeah, like we sat there and killed that boy.  He sits

11   there and tells her everything that we do as if he tells his

12   girlfriend everything that happens.  She wouldn't have known

13   if he hadn't told her.

14   Q    Did Harvey Holland give you any of the details about

15   what happened?

16   A    No.  Just except that when the guy pulled up, when he

17   showed up, they just shot him.  They shot him up.

18   Q    Now do you have a nickname of Sal?

19   A    Yes, I do.

20   Q    Was there a point in time when you were charged for

21   your involvement in distributing drugs along with these

22   defendants?

23   A    *Yes, I was in a conspiracy.*

24   Q    There was a point in time where you were incarcerated

25   in York County Prison?

222

Braxton - Direct

1    A      Yes, I was from May 14th to December 26th, yes,

2    December 26th.

3    Q      Of 2001?

4    A      Yes.

5    Q      While you were there, did you receive anything in the

6    mail like a letter?

7    A      I received a letter that was addressed to me that

8    stated I'm not -- I can't recite the letter word for word,

9    but things like just in case you didn't know, they're going

10   to use you until you can't be used no more.  You're a rat.

11   Why don't I shut the F up and stop running my mouth?  And

12   various things to that effect in reference to the case of

13   what I should not be talking about or discussing with the

14   federal agents.

15   Q      Had you plead guilty at that time?

16   A      Had I pled guilty?

17   Q      Yes.

18   A      Not at the time when I got the -- did I?  No, not at

19   the time when I got the letter, no.

20   Q      Have you since pled guilty?

21   A      Yes, I have.

22   Q      You have signed a plea agreement obligating you to

23   cooperate; is that correct?

24   A      Yes, with truthful testimony.

25   Q      Now you are facing a maximum term of imprisonment of

Braxton - Direct

1    ten years; is that correct?

2    A    Yes, I am.

3    Q    Pardon me?

4    A    Yes, I am.

5    Q    That letter that you received, was it signed; do you

6    remember?

7    A    It wasn't signed.

8    Q    How about the upper left-hand corner of the envelope,

9    did it have the name of an individual on it?

10   A    Waleed Thomas.

11   Q    Do you know that person?

12   A    I know him, yes.  I didn't know at the time who he was,

13   but I know who he is now because of various names.

14   Q    At the time you received the letter, you didn't know

15   him or know of him?

16   A    At the time because of the name, I didn't know the name

17   at first.  I didn't know the name.

18   Q    Have you in reading that letter heard any of these

19   defendants use any of those expressions?

20   A    That's the expression that I heard him use.  Just in

21   case you didn't know, that is the expression that Jeffrey

22   Holland uses often.

23   Q    Who was that?

24   A    Jeffrey Holland uses it often.

25   Q    Which is what?

<-4.

-Y QUESTIO  #  2    CR 01-145-02 + 06

#2

Can we see a copy of
all plea agreements?

Yes!

**FILED**
HARRISBURG, PA

JUN 6 2002

MARY E. D'ANDREA, CLERK
Per _____

X-4.

Charge of the Court

1    can really do is thank you very much for the attention you

2    have paid to this case and your willingness to be here.

3              I am sure it is somewhat disturbing to you that

4    you have been here for four days, and now you are not going

5    to get to deliberate with the other jurors.  But that is just

6    the way things are.  You may leave the jury box at this

7    time.  Just take a seat on the bench there if you would,

8    please.

9              We will send the few exhibits over to you that

10   have been admitted.  One of your number should be chosen to

11   be the foreman or forelady of your jury.  That person will

12   sign the forms that you have there.  One of the copies can be

13   used as the form that you will return to us.

14             You will be in charge Mr. Keith Berger, our Court

15   Security Officer.  I will swear him at this time.  You can

16   just stand there, Mr. Berger.

17             (Mr. Berger was duly sworn.)

18             THE COURT:  Ladies and gentlemen, at this point, I

19   don't need to tell you that this is an important case.  It is

20   important to the government because the dignity of our laws

21   must be upheld and the criminal laws that we have enacted

22   must be there and enforced to protect our citizens.

23             It is equally important -- in fact, more important

24   -- to these defendants because of the consequences that can

25   follow from your verdict.  However as I mentioned to you, the

553

Charge of the Court

1    duty concerning any penalty is a matter for the Court and not

2    for you.

3            You are all persons of intelligence and

4    experience.  And when you sit as jurors, you are expected to

5    combine those things in considering the evidence in

6    determining what inferences you should draw from the evidence

7    as to the matters that are in dispute.                    .

8            In reaching your conclusions, please be guided

9    solely by the testimony that has been presented to you, the

10    inferences that you draw from it, the arguments of counsel

11    and the instructions that I have given you on the law.

12            Decide this case, as I know you will, upon the

13    evidence and the evidence alone.  And don't be influenced by

14    any emotions such as fear, favor, prejudice or sympathy.

15            At this point, you may now retire and begin your

16    deliberations.  I believe lunch will be served to you soon.

17    We will be ready to receive your verdict this afternoon when

18    you reach it.  We will remain in session, please.

19            (The jury exits the courtroom at 12:48 to begin

20    deliberations.) THE.

21            THE COURT:  Mr. O'Connell, I believe you indicated

22    you would like to place an objection on the record concerning

23    the Charge.

24            MR. O'CONNELL:  Thank you, Your Honor.  Yes.  We

25    would like --

# NEW CASE OPENING:

## CASE NUMBER:

1:CV-05-218

## JUDGE ASSIGNMENT:

Caldwell/HGB.

## CASE CAPTION:

Holland vs USA

## DATE FILED:

2/2/05