# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JEFFREY HOLLAND
    Movant,

    V.

UNITED STATES OF AMERICA,
    Respondent,

Case No. 1:01-CR-195-02,06

FILED
HARRISBURG, PA

FEB 24 2005

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

## MOTION FOR LEAVE TO AMEND 28 U.S.C. § 2255 MOTION TO VACATE, SET-ASIDE OR CORRECT SENTENCE.

**NOW INTO COURT** comes **JEFFREY HOLLAND**, the petitioner, appearing through Pro se representation and respectfully moves this Honorable Court to file an Amendment to his 25 U.S.C. § 2255 motion to vacate, set-aside or correct sentence pursuant to Federal Rule Civil Procedure, **RULE 15(a)**. Leave to amend shall be freely given when justice so requires.

    A memorandum brief support of this motion is made part of this motion by reference herein.

RESPECTFULLY SUBMITTED

*Jeffrey Holland*
Jeffrey Holland
Reg. No. 36909-083
United States Penitentiary
Lee County, P.O. Box 305
Jonesville, VA. 24263-0305

IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF
PENNSYLVANIA

JEFFREY HOLLAND,
      Movant,

v.

UNITED STATES OF AMERICA,
      Respondent.

Case. No. 1:01-CR-195-02,06

FILED
HARRISBURG, PA

___ ___ 2005

_____ CLERK
Deputy Clerk

---

## MEMORANDUM BRIEF IN SUPPORT OF MOTION FOR LEAVE TO AMEND 28 U.S.C. § 2255 MOTION TO VACATE, SET-ASIDE OR CORRECT SENTENCE

---

Title 28 U.S.C. § 2242 provides that Habeas Corpus applications " may be amended or supplemented as provided in the Rules of Procedure applicable to civil action." Rule 12 of the rule governing 28 U.S.C. § 2255 proceedings authorized the use of Federal Rules of Civil Procedure to be applied to § 2255 proceedings.

The Federal Rules of Civil Procedure, Rule 15(a) gives Habeas Corpus petitioners like other civil complaintants the right to amend the petition once without leave of the court "at any time before [the government files] a responsive pleading." See, e.g. Willis v. Collins, 989 F.2d 187, 189 (5th Cir. 1993). After the petitioner files one preanswer amendment or the respondent submits an answer or other responsive pleadings, civil Rule 15 permits amendment "by leave of the court or by written consent of the adverse party." See, Withrow v. Williams, 113 S.Ct. 1745, 1755-56 (1993).

Leave to amend shall be freely given when justice so requires. See, e.g. Sanders v. United States, 373 U.S. 1, 10 L.Ed 2d 148, 83 S.Ct. 1068 (1963). An amendment to a § 2254 or § 2255 motion must be filed within the one year period of limitations set forth under the 1996 AEDPA. See, U.S. v. Duffus, 174 F.3d 333, 337 (3rd Cir. 1999).

Therefore based on the foregoing authorities where movant has filed motion pursuant to § 2255 in a timely manner (Feb. 10, 2005), the government upon having to be ordered to "respond" to said motion, but response remains due. And further where there remains two weeks for expiration of one year limitation period to the AEDPA, (1996), Id. at Duffus, for the purpose of tolling motion pursuant to § 2255. Indeed, movant seeks to move this court by way of motion to amend in a timely matter commensurate with all the above legal and procedural requisites.

Movant seek this court by and through its judicial benevolence as the law may allow, in the interest of justice, that he be permitted to amend original filing as movant has labored in an effort to file an "all inclusive § 2255 motion" without the aid of counsel and under the tyrranny of the clock. United States v. Miller, 197 F.3d 644 (3rd Cir. 1999).

Only subsequent to the completion of post conviction motion and filing did movant come to learn of an additional substantive legal error that effects his constitutional rights, i.e. due process of the law.

Cause for failure to raise issue during any prior proceeding is because issue was not previously available where it is dependant upon an intervening charge in Federal Constitutional and Statutory Law's, e.g. annulement of statutory constraints, via Fed. Sentencing Act, Sentencing Guidelines.

Movant intends that by absolutely no means shall this amendment be interpreted or used to render void or abrogate in whole or part there of any issue (claimed) raised in original motion and memorandum filed pursuant to § 2255, and in fact that all issues claimed there in or its order as priority prior to reaching merits of claims herein.

-2-

## ISSUE NUMBER ONE

Due to intervening charge in constitutional law (U.S.C.A. 6th) U.S. Supreme Court, U.S. v. Booker, No. 04-104, 543 U.S. ___, 2005. Where the Supreme Court amended the Federal Sentencing Act, 18 U.S.C. § 3551 et Seq., 28 U.S.C. § 991, rendering it advisory, when it annuled the sentencing provision that made the guidelines mandatory 18 U.S.C.A. § 3553(b)(1) and § 3742(e) due to their "unconstitutional nature."

Therefor; movant (petitioner) has received an unconstitutional and illegal sentence where sentencing court was constrained by statutes now abrigated, as unconstitutional. Causing movant a loss of substantial liberty's (two concurrent life imprisonment sentences, plus 60 months).

     *  *  *                                  *  *  *

Based on its precedent at **Blakely v. Washington, 542 U.S. ___, (2004)**, where the Supreme Court held **"[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribe statutory maxim must be submitted to a jury and proved beyond a reasonable doubt."** And further **"that the statutory maximum for Apprendi, purposes is the maximum sentence a judge may impose solely on the bases of the facts reflected in the jury verdict or admitted by the defendant."**

Addressing the Washington States Sentencing scheme the **Blakely** court enforced its previous holdings at **Jones v. United States, 526 U.S. 227, Apprendi v. New Jersey, 530 U.S. 466**, and **Ring v. Arizona, 536 U.S. 584**. Rendering Washington States Sentencing scheme unconstitutional.

As a result of the **Blakely** courts ruling and subsequent thereto, the government filed petition for certiorari at **U.S. v. Booker**, and **U.S. v. FanFan**, at 543 U.S. ___ (2005).

Seeking to clarify the possible applicability of the courts Blakeley, decision to the closely similar Federal Sentencing scheme with particular focus on its unconstitutional components.

That being the Federal Sentencing Guidelines, governed by the **Federal Sentencing Act,** in apperation through legislative enactment, and the Federal Sentencing Commission for more than seventeen years.

The Supreme Courts ruling on January 12th, 2005, although consistent with several of its antecedents  in some respect it contained a number of district legal factors that serves to set it apart from any of the previous related authority's.

That is unlike any of forgoing sixth amendment, (Apprendi-Winship) commonthread language, which provides the crux of subject matter, at the heart of legal question presented to the Supreme Court in those cases; the instant **Booker,** case has provided an exceptional parting with precedent by two distinct means.

**First,** in order to make its sixth amend. Blakeley, holding achievable when applied to the Federal Sentencing scheme while salvaging pertinent portions compatable with the constitution, the court annuled a substantial portion of the Federal Sentencing Act, or the U.S. Sentencing Guidelines. This included the sentencing courts inability to act with lawful and authoritive  discretion when determining sentencing. **[rendering guidelines advisory].**

**Second,** the way in which the court choose to carry out its task was by whats been referred to as "severability" (severance); permissible only when "an act of Congress containing unobjectionable provision separable from those found to be unconstitutional" "the invalid part may be dropped if what is left is fully operative as a law." [See, Brock, 480 U.S. at 684 (1987); and Valeo, 424 U.S. at 108 (1976)]. Consequently the Supreme Court struck down the unconstitutional statutes e.g., 18 U.S.C. § 3553(b)(1) and 3742(e), that governed the courts ability to exercise discretion with relation to sentence enhancements. **[Removing guidelines mandatory component].**

Movant (petitioner) contends that the Supreme Courts unprecedented ruling creates cause involving fundamental rights, by which he may seek relief based on constitutional law that had not been previously available.

The new law reveals errors of constitutional dimension, an exacting impact on substantive liberty interest. As movant (petitioner) was denied the constitutional guaranteed due process of the law. Where the sentencing courts authority had been constrained by statutes now rendered void and unconstitutional.

The constitutional violations particularly by way of, but not limited to, the now annuled legislative enactments, allow for a colorable claim via **28 U.S.C. § 2255**, where in movant (petitioner) seeks to recover substantial liberty's.

This court has jurisdiction (authority to act); both constitutional and statutory to effect relief, based on the three questions presented below, relying on the Supreme Courts new authority's at **U.S. v. Booker, 543 U.S. ____ (2005)**.

### THE THREE QUESTIONS

<u>Question number one</u>; that based on the most common interpetation relient on the plain language of Supreme Courts ruling at **U.S. v. Booker**, its application, including the lower Courts use of "prudential doctrines" for the purpose of case by case analysis.

All agree that the foundation upon which the unprecedented Supreme Courts ruling including the antecedents therein, lie both the U.S. Constitution, fifth amend. Due process clause (fundamental rights, liberty interest), and the **"Winship Doctrine"** See. **In re Winship, 397 U.S. 358, 364 (1970)**.

A judicial edicted designed to protect the accused against <u>conviction</u>, except upon proof beyond a reasonable doubt of every facts necessary to constitute the crime with which he is charged, e.g. Jones, Apprendi, and Ring, Blakeley.

Instead of rehashing the details of the <u>Blakeley</u> legal principle with relation to its applicability as to the Federal Sentencing Guidelines, for the purpose of demonstrating how it applies movant (petitioner) simply refer this court to the opening page, under the rubric "<u>issue number one</u>" where this court can obtain the Doctrinal attributes. i.e. (for **U.S. v. Booker**).

The matter presented by way of this question (#1), is that movant (petitioner) was

denied fundamental rights, through a substantial loss of liberties, when the trial court formerly acting upon authority allotted to it by law's which now is deemed unconstitutional and thus an unconstitutional exercise of authority.

Where the supreme court has made it unlawful for the federal courts to cause sentencing enhancements (departures) based on facts that hasn't been found by the petit jury. This also means movants (petitioner) statutory maximum sentence is now constrained by those facts conclusively deliberated upon and determined by that same body (Jurys vote).

Movant (petitioner) was not a beneficiary of the unprecedented constitutional mandate, now applicable to the federal sentencing scheme; where the judge admonished the jury as part of his substantive (initial) jury charge "... we didn't get any testimony about weight ... weight of controlled substances ..." (tr.pg. 550) [See pg 12, at (5) of § 2255 motion, supporting Ex.#3].

And further; the jury broke from its deliberations and submitted a note, Question #4, to the court asking "How much crack (weight) is in a $20.00 bag?" "We have no reference to determine weight. No direct testimony, evidence as to specific weight, ammounts, etc."

The court responded as part of a supplementary instruction "there was no testimony on this point. I can agree with that. There was testimony, however, about quantity depending on what you believe, not necessarily weights. One person described something as big as a box of kleenex. Another person described some cocaine as maybe the size of a baseball or orange or something I remember. That is the only testimony that would enable you to come to some conclusion about weight." (Tr. jury question. pg #2) [See pg 11, at (1), and supporting Ex #3].

The jury's weight or quantity question combined with the courts initial and supplementary instructions is material to question number one herein as part of the Booker, Id. inquiry for several reasons;

#1. Its apparently a forgoing conclusion based on jury's note, judges initial and supp. instruction, and the actual evidence presented or the lack these of, as against

movant (petitioner), there was no genuinely definitive or "conclus[ive]" evidence as to quantity of drugs attributable to movant (petitioner) ("individual finding") [**See pgs 11-12. at (3), of § 2255 motion**]. **In Re Sealed Case, 108 F.3d 372.**

**#2.** the language of the statutes or statutory proscriptions as provided at **title 21 U.S.C. § 841, and § 846 (substative and conspiracy)**, including its subsections that serves as essential elements to the **§ 841** offense, traditionally require a determination for an actual "detectable amount" or mixture" (verbatim languages omitted).

**#3.** The law require that there be specific evidence as to "detectable amounts", however the entire case was based on a dry conspiracy. No actual material such as crack or cocaine was siezed. **United States v. Hodge, 321 F.3d 429 (3rd Cir. 2003) [language as to mixture or substance with detectable amounts].**

thus there is no legal foundation in support of the sentence (two life sentences, concurrent, plus 60 months) where there was no factual foundation in support of the verdict. The court plainly stated in the record, there was no evidence against movant (petitioner) as to weigh. Apples, orange, or kleenex boxes, do not count for weight. Neither of them weight the same. And they have not been officiated (codified) by way of Congress as representative of narcotic weight in question. [See wherefore statement] *

<u>Question nember two</u>; as referenced at pg. ($\mathcal{4}$) the second way in which the court chose to make its **Blakeley holding** applicable to the Federal Sentencing scheme, i.e. removing U.S. Sentencing Guidelines mandatory component. Otherwise known as <u>**"severability"**</u> (severance)-**"an act of Congress containing unobjectionable provisions separable from those found to be unconstitutional"** However to accomplish this **"the invalid part may be dropped if what is left is fully operative as a law."**

This question concerns the matter of the "<u>invalid part</u>", invalid only because of its "unconstitutional nature." Which also means that wherever it was in use, it was unconstitutionally applied.

In movant's case and as part of his sentencing a substantial part of the court sentencing authority was defined by Legislative enactment otherwise known as the Federal Sent-

encing Act, particularly at the U.S. Sentencing Guidelines.

Respectively they are by statutory host at 18 U.S.C. § 3553(b)(1) and § 3742(e), which serves to govern the bounderies that impose limits on the courts sentencing discretion, there by making the U.S. Sentencing Guidelines and its cross reference statutes mandatory wherever factual circumstances correspond to one of those cross reference statutes.

This meant if such statutes by its mandatory language (shall) recomended a certain level point departure, based on certain alleged acts (not proven) the judge had to follow its proscriptions.

Now where the Booker, court his stricken (annuled) as unconstitutional the statutes (cited above), such has served to provide cause whereby movant (petitioner) by law is permitted to reaccert fundamental rights, as a substantial liberty interest was denied as a result of the previous application of said statutes, that served to constrain the courts sentencing authority (discretion). In violation of constitutional guarantees at 5th amend, U.S.C. for due process and 6th amend U.S.C. Jury trial guarantees.

Consistant with legal tradition and historical practice's of the courts, where statutes were rendered either unconstitutional. See, Marchetti v. United States, 309 U.S. 39 (1968) (26 U.S.C. § 4411); Haynes v. United States, 390 U.S. 85 (1968) (26 U.S.C. §5811); Romano v. United States, 382 U.S. 136 (1965) (26 U.S.C. § 5601(a)(1)); and United States v. Lopez, 514 U.S. 549 (1995) (18 U.S.C. § 922 (q)(1)(A)). Or that they where applied unconstitutionally. See, United States v. Frade, 709 F.2d 1387 (11th Cir. 1983); United States v. Mallas, 762 F.2d 361 (4th Cir. 1985). United States v. Domino, 62 F.3d 716 (5th Cir. 1995); United States v. Salisbury, 983 F.2d 1369 (6th Cir. 1993); United States v. Douglas, 64 F.3d 450 (8th Cir. 1994).

thereby causing the courts (respectively) to annule the statutes or remove a person from liberty constraints suffered as a result of the unconstitutional application of such statutes.

The forgoing authorities cited herein clearly demonstrate that where there was a liberty question the courts found it appropiate to effect immediate relief by releaving the prisoner, or modifying the punishment removing constraints that was dependant on the annuled statute.

Thus movant (petitioner) contends that this court has the authority based on precedent. Where the sentencing court acting under the authority given it by staute, believing it to have no discretion to depart from mandatory proscription as them provided in the **U.S.S.G.** to now render annuled (void) any departures on that mandatory language within the annuled, unconstitutional portion of the Federal Sentencing Act. 18 U.S.C. **§ 3553(b) (1) and § 3742(e) (severed).** [See wherefore statement]*

**Question number three;** here movant contends that prior to the courts ruling at **Booker,** **Id.** his sentencing court which adopted recommendations made by the probation dept, such that included a sentence of 20 yrs. minimum to life maximum for counts #1 (the substantive offense) **21 U.S.C. § 841(a)** and the same at count #5 (the conspiracy offense) **21 U.S.C. § 846.** Both running concurrent to each other followed by consecutive sentence of sixth months (60 m.), unidentified firearm at **18 U.S.C. § 924(c).**

The sentence recieved was the product of the then "mandated"- mandatory proscriptions within the former U.S. Guidelines, Federal Sentencing Act, at at **18 U.S.C. § 3553 (b)(1); § 3742(e).** Considered constitutional at the time conviction because final. (except for the **§ 924(c)** offense which was statutory).

That because the U.S. Supreme Court has officially annuled the relavent portions (cited above) due to its unconstitutionality (**6th U.S.C.A.**), thereby rendering Guidelines advisory. All such amounts to an amendment by way of Courts own motion.

Where the end result is that the unconstitutional portion of the guidelines has been severed in order to salvage the constitutionally compatible portion. See **Black's Law Dictionary (abridged seventh Ed.);**

-9-

## AMEND *

1. To make right; to correct or rectify [amend the order to fix a clerical error].
2. To change the wording of; specif. **to alter a statute, constitution, ect.) formerly by adding or deleting* a provision or by modifying the wording[ amend the legislative* bill.**

Here movant (petitioner) seek this court to apply customary legal procedures that ordinarily compel relief when the U.S. Guidelines are amended by the Sentencing Commission, affording the moving party the benefits of any amendments that trigger reductions in level calculation (level modification) pursuant to **18 U.S.C. § 3582 (c)(2). See, U. S. v. Coleman, 958 F.Supp. 453, 454 [1] (W.D. Mo. 1997).**

A downward modification of the sentence based on intervening charge in the law where the Supreme Court amends the U.S. **Sentencing Guidelines, or the Federal Sentencing Act,** causing a restoration of courts discretion.

The effect of which may allow district courts to reevaluate sentences previously imposed as now the statutory maximum's is constrained by those facts found only by the jury, eliminating any departures interdependant on annuled portion of the guidelines. Such shall include the use of preponderance of the evidence findings.

As there is nothing in the plain language of **§ 3582(c)(2),** that serves to exclude in any explicit terms, consideration of amendments to the guidelines occurring as a result of Supreme Courts ruling verses mandate from Sentencing Commission.

Downward modification relient an intervening change in sentencing guidelines has traditionally been examined for retroactive application of new amendments based on sentencing ranges that sentencing commission subsequently reduces. See **U.S. v. Crosby, 762 F.Supp. 658 (W.D. Pa. 1991).**

Availability of relief dependant on new guidelines amendments are also filtered through **U.S.S.G. 1B1.10 and § 1B1.10(c),** wherever modifications may be applied. **United States v. Cooley, 11 F.3d 97, 101 (8th Cir. 1993).**

Therefore mpvant implore  this  Court to apply the same standards generally used for amendments **"mandated"** by the U.S. Sentencing Commission, to that of Supreme Court's

severability amendments to the guidelines pursuant to § 3582(c)(2) [**unconstitutional question**]. [see wherefore statement].

### PERSONAL FACTS IN ERROR ( LEVEL,  POINT ADJUSTMENTS)

The following represents a nonconclusive summary of facts relied upon in Guidelines calculations, employed by the probation dept. and adopted by the court.

Movant (petitioner) submits that because information is merely retrieved from both the initial and final Presentence Reports, dates September 9th, 2002, and Sept. 27, 2002 (modified); he is only able to submit sentencing objections based on information available therein, corresponding with final sentencing hearing (Tr.).

Otherwise there is the need for the professional assistance of counsel, for the purpose of providing this court with complete and exact level computations and necessary adjustments that will be commensurate with inventing sixth amendment standards enjoined by the Supreme Court at U.S. v. Booker, Id..

> **Note**: The supp. probationary report (modification) does not include the detailed **Parts D-E** numbers 112-126. used for **PSR**. determination, therefore extrapolations will relie on initial report for details. [**See both reports attached ex-#1**].

Notably movant (petitioner) was originally charged with a five count indictment although he was convicted of counts 1, 5, and 3, acquited of counts IV,  which charge 18 U.S.C. § 924(j) the use of firearm, unknown make and model, for the purpose of "murder while during the unlawful distribution of cocaine base..."

However the goverment sought the Court to impose substantial level enhancements relying on the § 924(j) offense of which movant was acquited, and which objections was timely filed.

The government sought the court to use the preponderence of the evidence standard in order to conclude it mandatory to impose additional point level adjustments which also qualified through relevent conduct finding at U.S.S.G. § 1B1.3(a)(1)(A). Applicable to both counts #1, and 5.

Where it further reasoned a total offense level of forty three (43), criminal history category of VI, properly resulted in a guidelines sentence of life imprisonment at

(zone D). Based on U.S.S.G. **chapter 5, part A**), pursuant to 2K2.4.

The government further advised the court "the fact that the jury was in able to reach a verdict on the court charging the defendant with murder does not preclude the conduct from being considered by the court for sentencing as it is relevant conduct under **U.S.S.G. § 1B1.3(a)(1)(A)**"

A supposition totally in opposite with Supreme Courts **Booker,** finding (unconstitutional).

Additionally movants attorney has filed objections to governments objections, and the conclusion advanced by the probation dept. see letter by attorney James H. Turner, attached to modification order.

Finally the probationary report has attributed one and one half kilo of crack cocaine to movant although the indictment only charged 50 grams or more.

The modified report final recommendation based on preponderence standard placed the guidelines calculated pursuant to **U.S.S.G. § 2D1.1** base offense level of thirty eight, and two levels for obstruction of justice-60 months-life imprisonment seemingly compensated in no clear terms by the Courts final relience on the murder of Jason Harrigan, on order to impose the two concurrent life terms.-

Therefore as the record fully and properly reflect sufficient indicia warranting objections which under ordinary "prudential doctrines" and standard will cause said illegal enhancement error's to be preserved, especially where they were also argued in Appellate Court. Movant seek this court to render sentence unconstitutional, and appoint counsel so that the matter could be fully presented to the court.

Wherefore; with relations to all three questions presented in the forgoing points of argument, movant seek this Court to set aside, or vacate, conviction and or sentence. As sentence was had through unconstitutional means.

-12-

## CONCLUSION

Based on all the foregoing facts supported by law Movant concludes this colorable claim reminding this Court that Judgement was entered in this case June 6th, 2002. However, the authority **Apprendi v. New Jersey, 530 U.S. 466 (2000),** was controlling law by that date.

The intervening Supreme Court rulings at **Booker/Fanfan, Id.** served to provide clarity and to promulgate the full definition of it's earlier rulings this time declaring that the statutory maximum sentences is constrained by those facts actually found only by the jury, in the event of trial.

Hence, Movant seek this Court to apply **Apprendi, Id.** as it should have applied when his conviction became final(only this time adding the benefits newly provided through the now amended Federal Sentencing Act, U.S.S. Guidelines(anuled 18 U.S.C. § 3553 (b)(1); § 3742 (e)). In that case there is no question as to the retro-active application of the **Winship Doctrine,** as demonstrated in question number one. **Ivan V v. City Of New York, 407 U.S. 203, 205 (1972), Hankerson v. North Carolinia, 432 U.S. 233 (1977).** The same for question number two where there was an erronious enforcement of unconstitutional procedure, the now severed mandatory statutory proscriptions (anuled). **United States v. Johnson, 457 U.S.537' (1982).** All the same should this Court agree that the phrase " amend" can be applicable to Supreme Courts actions of severence. **U.S. v. Wyatt, 115 F 3d 606 (8th Cir. 1997)(18 U.S.C. § 3582 (c) question III).**

Based on all the above prejudiced can be found regardless of accuracy in calculation where it is clear that had it not been for enhancements dependant on the mandatory language of Guidelines in effect at the time of sentencing now rendered void and unconstitutional. **U.S. v. Hutton, 252 F 3d 1013 *8th Cir. 2001).** (Illegal terms of life imprisonment counts 1, 5.).

## AFFIRMATION

I *Jeffrey Holland* hereby affirm under the penalty of perjury pursuant to **18 U.S.C. 1746(2)**, that all foregoing factual claims with the support of law, to the best of my knowledge, are true and correct.

## CERTIFICATE OF SERVICE

**I hereby certify** that on February 22nd, 2005, Movant mailed one copy of this motion for levae to amend, and Actual Motion To Amend (**Civil Rule 15**) pursuant to original filing of **28 U.S.C. § 2255 Motion.** To William A. Behe, (A.U.S.A.) at Federal Building – 228 Walnut Street, Harrisburg, Pa. 17108.

*Jeffrey Holland*

Jeffery Holland, Pro se
Reg. No. 36909-083
United States Penitentiary
Lee County/ P.O. Box 0305
Jonesville, VA. 24263-0305

Please See Prison Mailbox Rule, timely filed at Prison: Houston v. Lack, 487 U.S. 266, 270 (1988).

(14)

# UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA
PROBATION OFFICE

## HARRISBURG

240 W. 3RD STREET, SUITE 114
WILLIAMSPORT 17705-1055
570 323 3688

ROGERS F. DONOHUE
CHIEF PROBATION OFFICER

September 9, 2002

WILLIAM J NEALON U.S. COURTHOUSE
P.O. BOX 191
SCRANTON 18501-0191
570 207-5840

P.O. BOX 805
HARRISBURG 17108 0805
717-901-2860

ROOM 201
197 S. MAIN STREET
WILKES BARRE 18701 1500
570-826-6257

MEMORANDUM TO: Jeffrey Holland

FROM:           John K. Vought
                U.S. Probation Officer

SUBJECT:        U.S.A. v. Jeffrey Holland
                Dkt. No.  1:CR-01-195-02

The Guidelines of the United States Sentencing Commission apply
to this case.

Pursuant to Rule 32(c)(3)(A), a copy of the Presentence Report is
being furnished to you, defense counsel, and the Government.  All
parties are expected to comply with the procedures set forth in
the attached "Amended Policy for Guideline Sentencing."

<u>Any objections you may have concerning the contents of the
Presentence Report should be communicated to your attorney.</u>

Enclosures

cc: Timothy J. O'Connell, Defense Counsel

## IN UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **SECOND REVISED** |
| | ) | **PRESENTENCE INVESTIGATION REPORT** |
| vs. | ) | |
| | ) | |
| Jeffrey Holland | ) | **Docket No. 1:CR-01-195-02** |
| | ) | |

---

**Prepared for:**    The Honorable William W. Caldwell
United States District Judge

**Prepared by:**    John K. Vought
Senior U.S. Probation Officer, Harrisburg Office
(717) 901-2860

**Assistant U.S. Attorney**                    **Defense Counsel**
William Behe                                   Timothy J. O'Connell
P.O. Box 11745                                 4415 N. Front Street
Room 217, Federal Building                     Harrisburg, PA 17110
Harrisburg, PA  17108                          (717) 232-4551
(717) 221-4482

**Offense:**    <u>Count I</u>: Distribution and Possession With Intent to Distribute 50 Grams or More of Crack Cocaine [21 USC § 841(a)(1)] - Mandatory Life (prior convictions), $8,000,000, and at least 10 years supervised release.

<u>Count III</u>: Use of a Firearm in Furtherance of a Drug Trafficking Crime [18 USC § 924(c)] - 5 years (mandatory consecutive minimum) - Life, $250,000.

<u>Count V</u>: Conspiracy to Distribute and Possess With Intent to Distribute 50 Grams or More of Crack Cocaine (21 USC § 846) - Mandatory Life (prior convictions), $8,000,000, and at least 10 years supervised release.

**Release Status:**    Arrested 8/6/01 and ordered detained.
(Incarcerated at Dauphin County Prison, PA)

**Detainers:**  None.

**Codefendants:**    <u>Harvey Holland</u> (1:CR-01-195-06) - Found guilty 6/6/02 on Counts II and V; awaiting sentencing.

**Related Cases:**    <u>Shawn Anderson</u> (1:CR-01-195-01) - Dismissed 2/5/02 due to death of defendant.
<u>Shiranda Posey</u> (1:CR-01-195-03) - Sentenced 6/24/02 on 21 USC § 843(b) to 48 months imprisonment and 1 year supervised release.
<u>Rebekah Christopher</u> (1:CR-01-195-04) - Sentenced 6/24/02 on 21 USC § 843(b) to 48 months imprisonment and 1 year supervised release.
<u>Anthony Braxton</u> (1:CR-01-195-05) - Sentenced 6/24/02 on 18 USC § 1952(a)(3)(2 counts) to 120 months imprisonment and 3 years supervised release.

**Date Report Prepared:** 9/9/02                    **Date Report Revised:** 9/27/02
                                                                              10/10/02

.derson concerning their involvement in the murder.
.hose individuals link the killing with drug trafficking and the
drug conspiracy.  The killing took place during the time frame
charged in the drug conspiracy count (V).  Toyann Anderson
testified that she pointedly asked Mr. Holland and Shawn Anderson
if they had done the shooting, to which they replied
affirmatively and reiterated, "Yeah, we had to take care of that
nigger because he was talking about getting our profits."  Ms.
Anderson said that the "profits" were from drug sales.  Anthony
Braxton told investigators that Holland had an ongoing dispute
with another drug dealer from New York known as "J" (Harrigan).
Ezerrell Bynum told investigators that Jeffrey Holland related to
him how he had tried to work out an arrangement with Jason
Harrigan regarding the sale of drugs and the sharing of assets in
business.  Bynum recalled Holland telling him that Harrigan
essentially told him that he wanted no part of it.  Omar Dykes
told investigators that he recalled Holland telling him that he
had a falling out with Harrigan over a drug debt.

Should the Court find for the defendant, the guidelines would be
calculated pursuant to USSG §2D1.1 and result in a base offense
level of thirty-eight because the amount of crack cocaine is one
and one-half kilograms or more.  Toyann Anderson recalled that
for several months until October 2000, she saw Mr. Holland and
Shawn Anderson cut large pieces of crack cocaine into smaller
pieces for resale on at least twelve occasions and estimated that
they would package several ounces of crack cocaine at a time.  At
least three ounces of crack cocaine on each of twelve occasions
equals 1,020.60 grams.  343- 347

Jody Covington was in New York in January 2001 with the defendant
and others when they bought a "baseball size" quantity of crack 365
cocaine.

Mark Hughes testified that he went to New York with the defendant
three times to get crack cocaine.  He said that on each of two
occasions the defendant got one-half kilogram quantities of
crack, and on the last occasion bought four ounces for a total of
approximately 1,113.4 grams.  337- 325 - 331

The testimony of Wayne Williams alone establishes the defendant's
involvement with one and one-half kilograms or more.  He said
that he helped the defendant and Shawn Anderson bag up crack
cocaine between fifteen and twenty times and recalled that they
bagged about seven ounces each time.  Seven ounces on at least
fifteen occasions equals 2,976.75 grams.

Adding two levels for obstruction of justice would result in a
total offense level of forty and a guideline range of 360 months
- Life imprisonment, however, because of the statutory
requirement for a mandatory life term, the guideline sentence
shall be life.

RESPECTFULLY SUBMITTED,

*John K. Vought*

John K. Vought
Senior U.S. Probation Officer

Approved:

_____ For          10/10/02
Edward J. Kosheba              Date
Deputy Chief U.S. Probation Officer

**(Revised 10/10/02)**

111. Mr. Holland is in custody and has no income or living expenses. Based on the above, it would appear that he is unable to pay a fine, however, it is believed that through the Inmate Financial Responsibility Program, the defendant can pay a minimal fine below the guideline range.

## PART D.   SENTENCING OPTIONS

### Custody

112. **Statutory Provisions:** Pursuant to 21 USC § 841(b)(1)(A) and 846, the mandatory term of imprisonment on each of Counts I and V is life because of the defendant's prior felony drug convictions. Concerning Count III, 18 USC § 924(c)(1) mandates a five-year term of imprisonment to run consecutively to any other term of imprisonment.

113. **Guideline Provisions:** In reference to Counts I and V, based on a total offense level of forty-three (43) and a criminal history category of VI, the guideline sentence is **Life** imprisonment (ZONE D). (USSG Chapter 5, Part A) Pursuant to USSG § 2K2.4, the term of imprisonment to be imposed on Count III is that required by statute.

### Impact of Plea Agreement

114. Not applicable.

### Supervised Release

115. **Statutory Provisions:** Pursuant to 21 USC § 841(b)(1)(A), the mandatory term of supervised release is at least ten years on each of Counts I and V.

116. Under 18 USC § 3583(b)(2), if a term of imprisonment is imposed, the Court may also impose a term of supervised release of not more than three years on Count III.

117. **Guideline Provisions:** Pursuant to USSG § 5D1.1(a), supervised release is required in sentences of more than one year. If supervised release is imposed, it shall be at least ten years on each of Counts I and V [USSG § 5D1.2(b)] and two to three years on Count III [USSG § 5D1.2(a)(2)].

### Probation

118. **Statutory Provisions:** Pursuant to 18 USC § 3561(a)(1), (2) and (3), a term of probation is not authorized.

119. **Guideline Provisions:** Pursuant to USSG § 5B1.1(b)(1),(2) and (3), and 5C1.1(f), probation is not authorized.

120. If a term of supervised release is ordered, the Court shall, pursuant to 18 USC § 3563(a) and 3583(d), impose a condition that the defendant submit to drug testing, but this condition shall be suspended if the Court finds there is a low risk of future substance abuse.

**(Revised 10/10/02)**

20

### Fines

121. **Statutory Provisions:**  The maximum fine is $8,000,000 on each of Counts I and V [21 USC § 841(b)(1)(B)].  The maximum fine on Count III is $250,000.  18 USC § 3571(b)(3).

122. A special assessment of $100 on each count is mandatory for a total of $300.  18 USC § 3013.

123. **Guideline Provisions:**  The fine range is $25,000 [USSG § 5E1.2(c)(3)] to $16,000,000 [USSG § 5E1.2(c)(4)].

124. Pursuant to 18 USC § 3572(a)(6) and USSG § 5E1.2(d)(7), in determining the amount of the fine, the Court shall consider the expected costs to the Government of any term of probation, or term of imprisonment and term of supervised release imposed.  The most recent advisory from the Administrative Office of the United States Courts dated June 3, 2002, suggests that an annual cost of $22,176.18 be used for imprisonment, $16,602.02 for community confinement, and $3,247.10 for supervision.

### Restitution

125. None.

**PART E.   FACTORS THAT MAY WARRANT DEPARTURE**

126. The probation officer has identified no factors warranting a departure from the guideline range.

Respectfully submitted,

John K. Vought
U.S. Probation Officer

# UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF PENNSYLVANIA
PROBATION OFFICE

## HARRISBURG

September 27, 2002

JOSEPH P. DONOHUE
CHIEF PROBATION OFFICER

WILLIAM J. NEALON U.S. COURTHOUSE
P.O. BOX 191
SCRANTON 18501-0191
570-208-5840

P.O. BOX 1055
WILLIAMSPORT 17703-1055
570-323-3688

P.O. BOX 805
HARRISBURG 17108-0805
717-901-2860

ROOM 201
197 S. MAIN STREET
WILKES-BARRE 18701-1500
570-826-6257

MEMORANDUM TO: Jeffrey Holland, Defendant
Timothy J. O'Connell, Defense Counsel
William Behe, Assistant U.S. Attorney

FROM:          John K. Vought
               U.S. Probation Officer

SUBJECT:       **HOLLAND, Jeffrey**
               Dkt. No. 1:CR-01-195-02

## MODIFICATIONS TO PRESENTENCE REPORT

I am submitting an Addendum on the subject.

Attached are a new face sheet and new pages 7 and 8 of the report.

Additional information linking the murder of Jason Harrigan to the defendant's involvement in the drug conspiracy has been added to Paragraphs 33, 34, 38 and 40.

**Identifying Data:**

| | |
|---|---|
| **Date of Birth:** | 1/12/68 |
| **Age:** | 34 |
| **Race:** | Black, Non-Hispanic |
| **Sex:** | Male |

| | | | |
|---|---|---|---|
| **S.S. #:** | 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 | | |
| **FBI #:** | 134135HA4 | | |
| **USM#:** | 36909-083 | | |
| **Other ID #:** | PA SID: 23103907 | PA OLN: | 26556350 |
| | NJ SID: 356545B | NJ OLN: | H62683930001682 |
| | VA SID: 1366851H | | |

| | |
|---|---|
| **Education:** | Tenth grade |
| **Dependents:** | None |
| **Citizenship:** | United States |

**Legal Address:**    Dauphin County Prison
501 Mall Road
Harrisburg, PA 17111

**Aliases:**

Eric Posey
Mark Posey
Jeffrey Howard
Jeff Hall
Jeffery Holand
Jeffrey L. Holland
Howard Hughes
Jeffrey Howard
Jeffery Hughes
Larnell Williams
"Jabril"

DOB:
1/11/68

SSN:
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
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
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
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
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
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
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

IN UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | ) | REVISED |
| | ) | PRESENTENCE INVESTIGATION REPORT |
| vs. | ) | |
| | ) | |
| Jeffrey Holland | ) | Docket No. 1:CR-01-195-02 |
| | ) | |

**Prepared for:**     The Honorable William W. Caldwell
United States District Judge

**Prepared by:**     John K. Vought
U.S. Probation Officer, Harrisburg Office
(717) 901-2860

**Assistant U.S. Attorney**
William Behe
P.O. Box 11745
Room 217, Federal Building
Harrisburg, PA  17108
(717) 221-4482

**Defense Counsel**
Timothy J. O'Connell
4415 N. Front Street
Harrisburg, PA 17110
(717) 232-4551

**Offense:**     **Count I**: Distribution and Possession With Intent to Distribute 50 Grams or More of Crack Cocaine [21 USC § 841(a)(1)] - 20 years (mandatory minimum) - Life, $8,000,000, and at least 10 years supervised release.

**Count III**: Use of a Firearm in Furtherance of a Drug Trafficking Crime [18 USC § 924(c)] - 5 years (mandatory consecutive minimum) - Life, $250,000.

**Count V**: Conspiracy to Distribute and Possess With Intent to Distribute 50 Grams or More of Crack Cocaine (21 USC § 846) - 20 years (mandatory minimum) - Life, $8,000,000, and at least 10 years supervised release.

**Release Status:**     Arrested 8/6/01 and ordered detained.
(Incarcerated at Dauphin County Prison, PA)

**Detainers:**   None.

**Codefendants:**     Harvey Holland (1:CR-01-195-06) - Found guilty 6/6/02 on Counts II and V; awaiting sentencing.

**Related Cases:**     Shawn Anderson (1:CR-01-195-01) - Dismissed 2/5/02 due to death of defendant.
Shiranda Posey (1:CR-01-195-03) - Sentenced 6/24/02 on 21 USC § 843(b) to 48 months imprisonment and 1 year supervised release.
Rebekah Christopher (1:CR-01-195-04) - Sentenced 6/24/02 on 21 USC § 843(b) to 48 months imprisonment and 1 year supervised release.
Anthony Braxton (1:CR-01-195-05)   Sentenced 6/24/02 on 18 USC § 1952(a)(3)(2 counts) to 120 months imprisonment and 3 years supervised release.

Date Report Prepared: 9/9/02                    Date Report Revised: 9/27/02

32.   Through investigation, agents established that Jeffrey
      Holland, Harvey Holland and Shawn Anderson were involved in
      the shooting.  Angela Jackson testified that when Harvey
      Holland once did not immediately show up to meet her as he
      regularly did, she asked him where he had been to which he
      replied, "I was taking care of business out at Camelot
      Village."  Jackson said that she questioned him further and
      he told her that he had killed someone.

33.   Toyann Anderson testified that she pointedly asked Jeffrey
      Holland and Anderson if they had done the shooting, to which
      they replied affirmatively and reiterated, "Yeah, we had to
      take care of that nigger cause he was talking about getting
      our profits."  Anderson stated that the "profits" were from
      drug sales.  Anderson said that the defendant and Shawn
      Anderson told her that Harvey Holland also participated in
      the murder.

34.   Anthony Braxton testified that the defendant had an ongoing
      dispute with another drug dealer from New York known as "J."
      Braxton recalled Mr. Holland telling him he, Harvey Holland
      and Shawn Anderson had killed Harrigan after waiting for him
      to come home.  Braxton said that he asked Harvey Holland
      about the murder and remembered him admitting that he and
      the defendant waited for Harrigan to return home and then
      shot him.

35.   Jamine Jackson testified that he had a short conversation
      once with Harvey Holland who told him that he had a "beef"
      with the guy who was killed and the guy was going to try and
      kill him, "so he did what he had to do."

36.   Shiranda Posey testified that on the day Harrigan was
      murdered, she returned to her and the defendant's apartment
      during mid-to-late evening, and Jeffrey Holland, Harvey
      Holland and Shawn Anderson were there and excited as they
      changed the television channels waiting for the news to come
      on.  Posey said that when news of the murder was broadcast,
      the defendant said, "Here it is, here it is."  Posey
      remembered that the three men made comments such as, "That
      nigger was dead," and "He got what he deserved."  Posey
      remembered Jeffrey Holland later telling her that he, Harvey
      Holland, and Anderson shot Harrigan.  Posey offered that
      Shawn Anderson also admitted to her that he, the defendant
      and Harvey Holland had committed the murder.

37.   Adrienne Stewart testified that Shawn Anderson confided to
      her that he, the defendant and another person shot Harrigan
      after waiting for him to return home.  Stewart recalled
      Anderson telling her that he and Jeffrey Holland knew
      Harrigan's routine because they had followed him several
      times prior to the incident.

38.   Ezerell Bynum testified that he once was with Jeffrey and
      Harvey Holland and Shawn Anderson and they were discussing
      the Harrigan shooting and told Bynum that they had murdered
      him.  Bynum recalled the defendant saying that he, Harvey
      Holland and Anderson cut a hole in the gate near where
      Harrigan usually parked his vehicle and waited for Harrigan
      to return.  Bynum told investigators that the defendant once
      related to him how he had tried to work out an arrangement
      with Jason Harrigan regarding the sale of drugs and the
      sharing of assets in the business and Harrigan essentially
      told him tha the wanted no part of it.

39. Aaron Pitts testified that he and Jeffrey Holland were incarcerated together and he (Holland) eventually confessed to the murder and described for Pitts why and how it happened and said that he and the others used three different guns. Pitts told agents that Mr. Holland believed he could "beat the case" because the only witness against him was his girlfriend and a guy named Sal (Anthony Braxton).

40. Investigators interviewed Omar Dykes who was also incarcerated with Jeffrey Holland. Dykes recalled Mr. Holland telling him that he had a falling out with Harrigan over a drug debt. Dykes remembered that the defendant telling him that he, Harvey Holland and Anderson waited for Harrigan and then shot him. Dykes told agents that Harvey Holland had approached him in the Dauphin County Prison and relayed a message to him from Anthony Braxton that he should tell the defendant to stop "running his mouth" about the homicide.

**Victim Impact**

41. The probation officer solicited victim impact information from Jason Harrigan's sister, aunt and girlfriend. No response was received. Government records reflect that Tamika Bland suffered from shrapnel wounds as a result of the shooting.

**Adjustment for Obstruction of Justice**

42. Toyann Anderson told investigators that on one occasion, Jeffrey Holland called her and told her, "You're done, you're dead" and accused her of calling the "feds" on him. Anderson also told investigators that she had seen Mr. Holland and Shawn Anderson in the possession of handguns.

43. Shiranda Posey told agents that she received a letter while at the Cumberland County Prison that was addressed to her and dated January 16, 2002. The return address was the residence of Hazel Florence, Mr. Holland's aunt, but she recognized the handwriting on the letter as the defendant's. In the letter, Mr. Holland asked Posey to lie to agents and tell them that she lied about anything she had previously told police. Mr. Holland told Posey to look up the penalty for perjury and because is not much, she should not worry about lying for him when she testifies. In the letter, Mr. Holland repeatedly tells Posey to not let the "white people" use her or fool her when they ask her to cooperate against him. The defendant wrote that he was afraid "not because of the drug charges, I'm talking about those murder charges." He again told Posey to not trust those "white people," and "There's only one way I could get life, that's if you testify against me."

44. While incarcerated, Anthony Braxton received a letter from Jeffrey Holland who used Waleed Thomas' name on the return address. In the letter, Mr. Holland tells Braxton that he is aware Braxton has been "telling on people in the world" and that maybe he (Holland) should be calling Braxton "Sal the rat." The defendant tells Braxton to be careful what he says to the FBI because, "They will use it against your rat ass in the long run." Mr. Holland says, "I know you are doing a lot of telling right?"... "So please do yourself a big favor and shut the fuck up because you know for yourself what part you really played"... "(Rat-Ass Nigga)."

## ADDENDUM TO THE PRESENTENCE REPORT

**United States District Court For The Middle District of Pennsylvania
United States v. Jeffrey Holland, Dkt. No. 1:CR-01-192-02**

### OBJECTIONS

#### By the Government

None.

#### By the Defendant

Defense counsel's only objection (attached) is to the probation officer's use of the murder of Jason Harrigan in calculating the guidelines.

In summary, counsel says that no weapons were ever recovered, there was no physical evidence linking the defendant to the shooting and the jury was unable to reach a verdict on the count charging the defendant with homicide. Counsel notes that there were individuals other than Mr. Holland and his coconspirators who had previous disagreements with Jason Harrigan. The defendant offers that investigative reports disclose that a resident of Camelot Village saw an unidentified white man running from the area immediately after the shots were heard. He notes that a taxi driver reported that she saw two black males in their early twenties in the vicinity of Camelot Village after the murder, they flagged her down, and she noticed that one of them was holding something in the front pouch of his sweatshirt. Counsel notes that with the exception of Toyann Anderson, the witnesses who implicated Mr. Holland in the homicide had extensive criminal backgrounds, were incarcerated at the time of their testimony, and had plea agreements with the Government which could substantially reduce their potential sentence in pending prosecutions against them. Counsel submits that even if the testimony from the various witnesses is somehow deemed sufficient to establish Mr. Holland's involvement in the killing by a preponderance of the evidence, it must further be established that the killing was carried out in furtherance of the drug conspiracy. Counsel believes that if the killing was done for some personal motive or some other disagreement, it would not comprise relevant conduct for purposes of sentencing. Counsel submits that there is very little evidence regarding the reason for the homicide and that the evidence proffered, specifically that of Toyann Anderson, is not sufficient to establish the homicide as one carried out in furtherance of the drug conspiracy.

The probation officer stands by the presentence report and trial testimony and witness interviews which consistently reveal that Mr. Holland, Harvey Holland and Shawn Anderson, by a preponderance of the evidence, killed Jason Harrigan. The fact that the jury was unable to reach a verdict on the count charging the defendant with homicide does not preclude the conduct from being considered by the Court for sentencing as it is relevant conduct under USSG § 1B1.3(a)(1)(A). The evidence seems convincing that Mr. Holland and the others killed Mr. Harrigan. Nine individuals either testified or told agents of conversations they had with Mr. Holland and/or Harvey Holland and Shawn

Anderson concerning their involvement in the murder.
These individuals link the killing with drug trafficking and the
drug conspiracy. The killing took place during the time frame
charged in the drug conspiracy count (V). Toyann Anderson
testified that she pointedly asked Mr. Holland and Shawn Anderson
if they had done the shooting, to which they replied
affirmatively and reiterated, "Yeah, we had to take care of that
nigger because he was talking about getting our profits." Ms.
Anderson said that the "profits" were from drug sales. Anthony
Braxton told investigators that Holland had an ongoing dispute
with another drug dealer from New York known as "J" (Harrigan).
Ezerrell Bynum told investigators that Jeffrey Holland related to
him how he had tried to work out an arrangement with Jason
Harrigan regarding the sale of drugs and the sharing of assets in
business. Bynum recalled Holland telling him that Harrigan
essentially told him that he wanted no part of it. Omar Dykes
told investigators that he recalled Holland telling him that he
had a falling out with Harrigan over a drug debt.

Should the Court find for the defendant, the guidelines would be
calculated pursuant to USSG § 2D1.1 and result in a base offense
level of thirty-eight because the amount of crack cocaine is one
and one-half kilograms or more. Toyann Anderson recalled that
for several months until October 2000, she saw Mr. Holland and
Shawn Anderson cut large pieces of crack cocaine into smaller
pieces for resale on at least twelve occasions and estimated that
they would package several ounces of crack cocaine at a time. At
least three ounces of crack cocaine on each of twelve occasions
equals 1,020.60 grams.

Jody Covington was in New York in January 2001 with the defendant
and others when they bought a "baseball size" quantity of crack
cocaine.

Mark Hughes testified that he went to New York with the defendant
three times to get crack cocaine. He said that on each of two
occasions the defendant got one-half kilogram quantities of
crack, and on the last occasion bought four ounces for a total of
approximately 1,113.4 grams.

The testimony of Wayne Williams alone establishes the defendant's
involvement with one and one-half kilograms or more. He said
that he helped the defendant and Shawn Anderson bag up crack
cocaine between fifteen and twenty times and recalled that they
bagged about seven ounces each time. Seven ounces on at least
fifteen occasions equals 2,976.75 grams.

Adding two levels for obstruction of justice would result in a
total offense level of forty and a guideline range of 360 months
- Life imprisonment.

RESPECTFULLY SUBMITTED,

John K. Vought
Senior U.S. Probation Officer

Approved:

Edward J. Koshcha                    9/27/02
Edward J. Koshcha                    Date
Deputy Chief U.S. Probation Officer

TURNER AND O'CONNELL
ATTORNEYS AT LAW
4415 NORTH FRONT STREET
HARRISBURG, PA 17110

JAMES H. TURNER
TIMOTHY J. O'CONNELL

TELEPHONE
717-232-4551

FAX
717-232-2115

September 25, 2002

John K Vought
U.S. Probation Officer
United States District Court
P.O. Box 805
Harrisburg, PA  17108



RE:    USA v. Jeffrey Holland
       No. 1:CR-01-195-02

Dear Mr. Vought:

The defendant submits the following in support of his objection to inclusion of the Jason Harrigan homicide as relevant conduct under U.S.S.G. Section 2D1.1(d)(1): No weapons used were ever recovered and no physical evidence linking the defendant to the shooting was found. The jury was unable to reach a verdict on the count charging the defendants with the homicide and the charge was subsequently dismissed upon motion of the United States Attorney.

Police reports compiled during the investigation of the homicide by the Susquehanna Township Police Department disclose the names of individuals other than the charged defendants who had previous disagreements with the decedent Harrigan. A friend of Harrigan by the name of Eugene McDonald stated that Harrigan had a "major problem" with two men named "Nitty" (Frankie Gordon) and "Jabar" (Robert Baylor). Harrigan told McDonald Harrigan had exchanged words with Nitty at Roebucks bar and then it turned into a fistfight. The following day both were again at Roebucks and the fight resumed. Outside the bar, Jabar, a friend of Nitty, pulled a gun and shot Black, a friend of Harrigan's, in the shoulder. After that, a number of shots were fired, according to McDonald. McDonald reported that he thought the grudge was still outstanding at the time of Harrigan's murder.

The reports further disclose that the decedent's girlfriend, cousin and other friends referred to a person by the name of "James" who was believed to be a rival drug dealer on the hill who "had it out" for Harrigan. The identify of "James" was never determined.

John K. Vought
September 25, 2002
Page 2

      On the evening of the murder, the reports also disclose that a resident of Camelot Village saw an unidentified white man running from the area immediately after the shots were heard. A taxi driver reported that shortly after the time of the homicide, she saw two black makes in their early twenties in the vicinity of Camelot Village. They flagged her. She said one of the individuals seemed to be holding something in the front pouch of his sweatshirt. She gave the other individual a ride to a location on Walker Mill Road but not specifically in front of any residence. The cab driver said it was against policy to pick up individuals in this manner and that they made her very nervous. The identity of these individuals was never determined.

      The witnesses who implicated the defendant in the homicide testified that the defendant made admissions that he had been involved. With one exception, the witnesses who testified to alleged admissions made by the defendant had extensive criminal backgrounds, were incarcerated at the time of their testimony, and had plea agreements with the government which could substantially reduce their potential sentence in pending prosecutions against them. The one exception, Toyanne Anderson, was the sister of one of the defendants and was involved in transporting and storing drugs for the defendants. She was never charged for her admitted involvement in the activities. She testified at trial that while she was in the back seat of an automobile driven by Shawn Anderson, the defendants admitted killing the decedent, Jason Harrigan, because of "some kind of drug conflict." Anderson had earlier given a statement to Detective James Heilig and S.A. Dan Craft that the killing followed an incident at Roebucks Tavern in Harrisburg. According to Ms. Anderson, Shawn Anderson had approached Harrigan's girlfriend (who was also in the shooting) not knowing that she was with Harrigan and a confrontation occurred. Ms. Anderson said Harrigan got "all up into Shawn's face" and following this episode the defendants followed Harrigan out to Camelot Village and "shot the guy." She testified that in another conversation "they had to pull out on that nigger because he wanted their profits." Statement (4-3-01 page 4). Tanika Bland, the decedent's girlfriend, testified in some detail at trial of the activities of the decedent and herself the evening of the homicide. At no time did she make any reference to Roebucks Tavern or any confrontation with the defendants. If such a confrontation did not occur, it raises a question as to Toyanne Anderson's accuracy as a witness. If such a confrontation occurred and if it was a motivating factor for the homicide, it raises a question as to whether the killing was drug related at all. It should also be pointed out that in this same statement Ms. Anderson described Shironda Posey as the "mastermind" of the alleged drug business conducted by the defendants. This contention was not supported by any other evidence in the government's case.

      Anthony Braxton testified as to an admission allegedly made by Jeffrey Holland regarding the Harrigan homicide. (P.S.R. para. 34). Braxton was charged in the original indictment with Jeffrey Holland, Shironda Posey, Shawn Anderson and Rebekah

John K. Vought
September 25, 2002
Page 3

Christopher. If convicted, Braxton would have qualified as a career offender. In return for his promise of cooperation, he was allowed to plead to a two-count information charging interstate travel in aid of drug trafficking carrying a maximum sentence of ten years. The plea agreement further provided for a potential 5K1.1 departure for substantial assistance.

Shironda Posey testified as to alleged admissions made by Jeffrey Holland. Posey, who was also charged in the original indictment with Jeffrey Holland, was permitted, in return for her cooperation, to plead to a one-count indictment charging the use of a telephone to facilitate a drug offense. This offense carries a four-year maximum penalty. The plea agreement also provided for a downward departure under 5K1.1 for substantial assistance.

Ezerell Bynum, aka Waleed Thomas, testified as to alleged admissions made by the defendant and his co-defendants on an occasion he was in Harrisburg for a "PennDOT issue." Bynum had an extensive criminal record including arson, kidnapping, receiving stolen property and controlled substance convictions. At the time of his testimony, Bynum was awaiting sentence on the charge of uttering fictitious financial instruments. He testified pursuant to a plea agreement providing for a 5K1.1 departure for substantial assistance. He admitted on cross examination that the "PennDOT issue" which brought him to Harrisburg was the procurement of a false identification card under the name of his cousin Waleed Thomas to assist him in avoiding arrest in the event he was stopped for an arrest warrant he knew was outstanding.

Aaron Pitts testified to alleged admissions made by the defendant about the homicide while the two were housed in Dauphin County Prison. (P.S.R. para. 39). Pitts had previously plead guilty pursuant to a plea agreement putting a cap on his potential sentence for distribution of a controlled substance. He would have otherwise been exposed to a sentence as a career offender. The agreement also provided for a 5K1.1 departure for substantial assistance.

Omar Dykes did not testify but was interviewed by investigators regarding alleged admissions he claimed the defendant made while housed at the Dauphin County Prison. At the time of this testimony, Dykes, who had been charged in a drug related homicide, was testifying as part of a plea agreement charging him with 18 U.S.C. 924(j) carrying a ten-year maximum sentence. The agreement also provided for a downward departure for substantial assistance.

It is submitted that in the absence of any eyewitness testimony or physical evidence linking the defendant to the Harrigan homicide, the evidence is insufficient to establish defendant's involvement by a preponderance of the evidence. Each witness who testified as to alleged admissions made by the defendant had something to gain from their testimony and all but Toyanne Anderson had extensive criminal records. Even if testimony from the sources was somehow deemed sufficient to establish defendant's

John K. Vought
September 25, 2002
Page 4

involvement in the killing by a preponderance of the evidence, it must further be
established that the killing was carried out in furtherance of the drug conspiracy. If it was
done for some personal motive or some other disagreement it would not comprise
relevant conduct for purposes of sentencing. It is submitted that there is very little
evidence regarding the reason for the homicide. The evidence which was proffered,
specifically that of Toyanne Anderson, is not sufficient to establish the homicide as one
carried out in furtherance of the drug conspiracy.

                                          Sincerely,

                                          Timothy J. O'Connell

TJO:sf



www.usps.com

LEGAL MAIL *

JEFFREY HOLLAND #36909-883
UNITED STATES PENNITENTIARY
LEE County. PO Box 305
Jonesville, VA 24263
(PRO SE)*

DATE
2/22/05

U.S. DISTRICT Court
MIDDLE DISTRICT OF PENN
SYLVANIA: U.S. Courthouse
228 WALNUT Street
PO. Box 983 HARRISBurg,
PA 17108
Clerk of the Court

U. S. PENITENTIARY - LEE COUNTY
PO Box 900 - Jonesville, VA 24263
DATE _____2/19/05_____
"Special / Legal Mail"
The enclosed letter was processed through special mailing
procedures for forwarding to you. The letter has been
neither opened or inspected. If the writer raises a question
or problem over which this facility has jurisdiction you
may wish to return the material for further information
or clarification. If the writer encloses correspondence
for forwarding to another addressee, please return the
enclosed to the above address.

▲ PLACE LABEL HERE ▲

The efficient FLAT RATE ENVELOPE.
**You don't have to weigh the envelope...Just pack all your correspondence and documents inside and pay only the FLAT RATE Priority Mail postage.**

**We Deliver.**

© EP14F FEBRUARY 2002 USPS  ALL RIGHTS RESERVED