**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **3:01-CR-195** |
| **v.** | : | **(JUDGE MARIANI)** |
| | : | |
| **JEFFREY HOLLAND,** | : | |
| | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

### I. INTRODUCTION

On April 10, 2019, Defendant Jeffrey Holland filed a Motion for Resentencing

Hearing Under Section 404 of the First Step Act. (Doc. 496). In his Motion and supporting

briefs, Defendant requests this Court to resentence Defendant and impose a "sentence

variance to time served." (Doc. 543 at 1). Upon review of the many written submissions

from both parties,[1] the Court will grant Defendant's Motion for Resentencing Under Section

404 of the First Step Act, but deny the relief requested therein.

---

[1] The parties' submissions include, but are not limited to, the following: Motion for a Resentencing
Hearing under Section 404 of the First Step Act (Doc. 496); Brief in Support of a Resentencing Hearing (Doc.
497); Government's Brief in Opposition to Motion for Resentencing Hearing (Doc. 507); Reply Brief in Support
of Resentencing Hearing (Doc. 509); Addendum to the Presentence Report on Defendant Requesting
Sentence Reduction (Doc. 536); Government's Sentencing Memorandum (Doc. 541); Defendant's
Sentencing Memorandum (Doc. 543); Memorandum in Support of Objections to the Presentence
Investigation Report (Doc. 566); Objections to the Presentence Investigation Report (Doc. 566-1);
Defendant's Letter Brief Regarding *United States v. Murphy*, 998 F.3d 549 (3d Cir. 2021) (Doc. 567);
Government's Letter Brief Regarding *United States v. Murphy*, 998 F.3d 549 (3d Cir. 2021) (Doc. 568).

## II. Factual Background

In 2002, Jeffrey Holland was convicted of distribution and possession with the intent to distribute 50 grams or more of crack cocaine in violation of 21 U.S.C. § 841(a)(1) (count one), use of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) (count three), and conspiracy to distribute and possess with the intent to distribute 50 grams or more of crack cocaine in violation of 21 U.S.C. § 846 (count five).  (Doc. 248 at 1).

Before Jeffrey's trial began, the Government filed an Information to Establish Prior Convictions Pursuant to 21 U.S.C. § 851(a)(1) ("§ 851 Notice") because the Government sought an "enhanced penalty pursuant to 21 U.S.C. § 841(b)(1)(A)." (Doc. 190 at 1).  The § 851 Notice lists three of Jeffrey's prior "felony cocaine conviction[s]" from March 7, 1991 in Essex County, New Jersey. (Id. at 1-2).  Looking at Jeffrey's prior convictions listed in the Presentence Investigation Report prepared by Senior U.S. Probation Officer John Vought in 2002 ("PSR"), it is evident that the "felony cocaine conviction[s]" referenced in the § 851 Notice are convictions for (1) possession with intent to distribute cocaine in Essex County, New Jersey; (2) possession with intent to distribute cocaine in Essex County, New Jersey; and (3) possession with intent to distribute cocaine, possession with intent to distribute cocaine within 1,000 feet of a school in Essex County, New Jersey.  (PSR at ¶¶ 60-62; Doc. 190 at 1-2; Doc. 543 Ex. 1).

Defendant's base offense level for counts one and five was determined by the application of the USSG § 2A1.1 cross reference included in USSG § 2D1.1(d), instead of

2

applying the guideline for 21 U.S.C. §§ 841(a)(1) and 846. (PSR at ¶ 47). This cross reference applies to defendants "if a victim was killed under circumstances constituting murder under 18 U.S.C. § 1111." (*Id.*). The PSR explained that "[t]he Government's evidence establishes by a preponderance of the evidence that the defendant, Harvey Holland and Shawn Anderson premeditatedly killed Jason Harrigan, constituting first degree murder." (*Id.*). Through the application of the § 2A1.1 cross reference, Defendant's base offense level was 43. (*Id.*) Pursuant to USSG § 3C1.1, Defendant also received a two-level upwards adjustment of his base offense level for his correspondence with Toyann Anderson, Shiranda Posey, and Anthony Braxton. (PSR at ¶ 51).[2] Thus, his base offense level was raised to 45. (*Id.* at ¶ 52).

Defendant was determined to be a career offender under USSG § 4B1.1 based on the prior convictions. (*Id.* at ¶ 54). The offense level for career offenders is 37. (*Id.*)

---

[2] The facts underlying the adjustment for obstruction of justice are as follows:

Mr. Holland called Toyann Anderson and accused her of calling the "feds" on him and telling her, "you're done, you're dead." He sent a letter to Shiranda Posey in which he asks her to lie to agents and tells her to not worry about lying because the penalty for perjury is "not very much," and there is only one way he could get life imprisonment on the murder charges and that is if she testified against him. Anthony Braxton received a letter from the defendant who let Mr. Braxton know that he was aware Braxton was talking to the authorities. Mr. Holland refers to Braxton as a "rat" and told Braxton to do himself a big favor and shut up. Under USSG § 3C1.1, because the defendant willfully [sic] attempted to obstruct or impede the administration of justice during the course of the investigation, prosecution or sentencing of the instant offense by threatening, intimidating, and otherwise unlawfully influencing a codefendant or witness, directly or indirectly, and the obstructive conduct related to the defendant's offense of conviction and relevant conduct, a two-level increase is warranted.

(PSR at ¶ 51).

However, because Defendant's base offense level determined by the application of USSG §

2A1.1 and the adjustment for obstruction of justice (45) is higher than the career offender

offense level (37), Probation used the offense level determined by USSG § 2A1.1 and the

obstruction of justice adjustment.  (*Id.* ("[B]ecause the offense level determined above (45)

is greater than that of career offender (37, USSG § 4B1.1(A)), the offense level as

determined above is to be used.")).

The PSR listed Defendant's adult criminal convictions and determined that they

"result in a subtotal criminal history score of seventeen."  (PSR at ¶¶ 58-67).  His criminal

history score was raised to nineteen "[b]ecause the defendant committed the instant offense

less than two years after his release from imprisonment in Essex County Superior Court."

(*Id.* at ¶ 69).  Defendant received a criminal history category of VI because a criminal history

score of thirteen or more correlates to a criminal history category of VI and the criminal

history category for career offenders is automatically VI.  (*Id.* at ¶ 70).

At the time of the original sentencing, Defendant's trial counsel objected to the use of

the USSG § 2A1.1 cross reference guidelines enhancement because the jury did not convict

Defendant on count four, which charged him with use of a firearm during and in relation to a

drug trafficking crime which resulted in the murder of Jason Harrigan and aiding and abetting

such conduct in violation of 18 U.S.C. §§ 924(j).  (2002 PSR Addendum).  In response,

Probation explained in detail why it believed the § 2A1.1 cross reference was appropriate and

summarized the evidence supporting its conclusion that the Government had proven by a

4

preponderance of the evidence that Defendant, along with two co-defendants, murdered Jason Harrigan in a premeditated fashion. (*Id.*). Probation also noted that if the court determined that the § 2A1.1 cross-reference did not apply, Defendant's guidelines sentence would be determined by USSG § 2D1.1 and would "result in a base offense level of thirty-eight because the amount of crack cocaine is one and one-half kilograms or more." (*Id.*).

Judge Caldwell sentenced Defendant on October 10, 2002, and over Defendant's objection, determined that application of USSG § 2A1.1 was warranted. Before announcing Defendant's sentence, Judge Caldwell summarized his rationale:

> I have absolutely no trouble concluding that Mr. Holland was involved in the drug killing of Harrigan. I am not only persuaded by the preponderance of the evidence, I don't think there is any reasonable doubt.

> Certainly one or more of the jurors felt the same way because they were hung and couldn't agree, and we never know what causes hung juries.

> But having heard the testimony had I been on the jury, I would have come to the conclusion that I have just announced.

(Doc. 254 at 10-11). Judge Caldwell ultimately sentenced Defendant to life imprisonment on counts one and five to be served concurrently and to a term of 60 months imprisonment on count three to run consecutive to the life sentences, in addition to a fine and terms of ten years supervised release on each of counts one and five, and a three year term of supervised release on count three. (*Id.* at 19-20).

Defendant filed appeals and a variety of post-conviction relief motions, all of which were denied. Defendant now moves for relief under the First Step Act.

5

## III. ANALYSIS

### a. Whether Defendant is Eligible for Resentencing Under the First Step Act

First the Court will determine whether Defendant is eligible for relief pursuant to the First Step Act. *United States v. Shields*, 2022 WL 3971778, at *8 (3d Cir. Sept. 1, 2022) ("First, upon receiving the [motion for First Step Act resentencing], the court determines whether the defendant is eligible for relief under the statute[.]"). "The First Step Act authorizes district courts to reduce the prison sentences of defendants convicted of certain offenses involving crack cocaine. The Act allows a district court to impose a reduced sentence 'as if' the revised penalties for crack cocaine enacted in the Fair Sentencing Act of 2010 were in effect at the time the offense was committed." *Concepcion v. United States*, 142 S.Ct. 2389, 2396 (2022). Section 404 of the First Step Act specifies its applicability:

> (a) DEFINITION OF COVERED OFFENSE. – In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010.

> (b) DEFENDANTS PREVIOUSLY SENTENCED. – A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

> (c) LIMITATIONS. – No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the

6

date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

Pub. L. 115-391, § 404(a)-(c), 132 Stat. 5222.

Here, the Court finds that Defendant is eligible for resentencing under the First Step Act for his convictions on counts one and five. Defendant was convicted of distribution and possession with intent to distribute 50 grams or more of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1), conspiracy to distribute and possess with intent to distribute 50 grams or more of crack cocaine in violation of 21 U.S.C. § 846, and use of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(j). The statutory penalties for the crack cocaine-related offenses of which Defendant was convicted were modified by the Fair Sentencing Act of 2010. Pub. L. No. 111-220, § 2, 124 Stat. 2371 (increasing the minimum quantity of cocaine base needed to trigger the ten-year minimum sentence under 21 U.S.C. § 841(b)); *see also United States v. Murphy*, 998 F.3d 549, 553 (3d Cir. 2021). The conduct underlying the charges of which Defendant was convicted occurred between January 1997 and April 2001, and Defendant was sentenced in October 2002. (*See generally* PSR). The limitations on resentencing eligibility described in § 404(c) of the First Step Act do not apply. Therefore, Defendant is eligible for a sentencing reduction pursuant to the First Step Act.

### b. Whether Defendant is Entitled to a Resentencing Hearing

In *United States v. Easter*, the Third Circuit held that a defendant moving for resentencing pursuant to the First Step Act "is not entitled to a plenary sentencing hearing

7

at which he would be present." *United States v. Easter*, 975 F.3d 318, 326 (3d Cir. 2020)

(collecting cases);[3] *Murphy*, 998 F.3d at 555 (reaffirming *Easter*); *see also United States v.*

*Barlow*, 2022 WL 820462, at *1 (3d Cir. March 18, 2022) ("Regardless, a defendant moving

for a sentence reduction under the First Step Act 'is not entitled to a plenary resentencing

hearing at which he would be present.'" (quoting *Easter*, 975 F.3d at 326)); *United States v.*

*Bullock*, 2021 WL 4145233, at *2 (3d Cir. Sept. 13, 2021) ("Action by a district court under

the First Step Act is discretionary and does not entitle movants like Bullock to plenary

resentencing or a resentencing hearing." (citing *Easter*, 975 F.3d at 326)).  The Third Circuit

reaffirmed *Easter*, holding, "neither the original sentencing judge nor a judge to whom the

case has been reassigned is required to hold an in-person resentencing hearing on a First

Step Act motion[.]"  *Shields*, 2022 WL 3971778, at *7.

  In light of the controlling Third Circuit caselaw summarized above, the Court finds that

Defendant is not entitled to a plenary resentencing hearing.  As such, the Court will evaluate

the merits of his Motion for resentencing based on the parties' written submissions.[4]

---

  [3] The parties fully briefed the issue of whether a hearing is necessary.  (*See* Doc. 497; Doc. 507; Doc. 509).  These briefs, however, were filed between April and June of 2019, which is years before the Third Circuit decided *United States v. Easter* in September of 2020, *United States v. Murphy* in May of 2021 (and amended in August 2021), and *United States v. Shields* in September of 2022.  Therefore, the Court did not rely on these briefs.

  [4] The parties have submitted extensive written briefings to the Court, including sentencing memoranda and objections to the PSR.  (*See supra* n.1); *see also Shields*, 2022 WL 3971778, at *8 (finding the district court "erred by denying Shields either a hearing or a reasonable opportunity to present his sentencing arguments in writing").

### c. Sentencing Guidelines

As stated above, Section 404(b) of the First Step Act provides that if a defendant is eligible for resentencing the Court may "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (P. L. 111-220; 124 Stat. 2372), were in effect at the time the covered offense was committed." Pub. L. 115-391, § 404(b), 132 Stat. 5222. "[T]he language Congress enacted in the First Step Act specifically requires district courts to apply the legal changes in the Fair Sentencing Act when calculating the Guidelines if they chose to modify a sentence." *Concepcion*, 142 S.Ct. at 2402. However, a resentencing court cannot

> recalculate a movant's benchmark Guidelines range in any way other than to reflect the retroactive application of the Fair Sentencing Act. Rather, the First Step Act directs district courts to calculate the Guidelines range as if the Fair Sentencing Act's amendments had been in place at the time of the offense. That Guidelines range "anchor[s]" the sentencing proceeding. *Peugh v. United States*, 569 U.S. 530, 541, 133 S.Ct. 2072, 186 L.Ed.2d 84 (2013). The district court may then consider postsentencing conduct or nonretroactive changes in selecting or rejecting an appropriate sentence, with the properly calculated Guidelines range as the benchmark.

*Id.* at 2402 n.6; *see also Shields*, 2022 WL 3971778, at *4.

In addition, "a district court must generally consider the parties' nonfrivolous arguments before it." *Concepcion*, 142 S.Ct. at 2404. Although the district court must consider these nonfrivolous arguments, it "is not required to be persuaded by every argument parties make, and it may, in its discretion, dismiss arguments that it does not find compelling without a detailed explanation." *Id.* As the Supreme Court summarized,

9

> The First Step Act does not require a district court to accept a movant's argument that evidence of rehabilitation or other changes in law counsel in favor of a resentence reduction, or the Government's view that evidence of violent behavior in prison counsel against providing relief.  Nor does the First Step Act require a district court to make a point-by-point rebuttal of the parties' arguments.  All that is required is for a district court to demonstrate that it has considered the arguments before it.

*Id.* at 2404-05.  As part of this analysis, a district court is "authorized to take into account, at the time of resentencing, any changed circumstances, 'includ[ing] post-sentencing developments, such as health issues or rehabilitation arguments, as were raised' by the parties."  *Shields*, 2022 WL 3971778, at *4 (quoting *Murphy*, 998 F.3d at 559; *Easter*, 975 F.3d at 327); *see also Concepcion*, 142 S.Ct. at 2398-2403.  Finally, although a court may do so, courts are not required to impose a reduced sentence when evaluating a First Step Act motion.  *Easter*, 975 F.3d at 327; *Concepcion*, 142 S.Ct. at 2404 ("Section 404(c) of the First Step Act confers particular discretion, clarifying that the Act does not 'require a court to reduce any sentence.'").

Using the above framework, the Court will first determine Defendant's Guidelines range, consider the nonfrivolous arguments raised by Defendant, and will then turn to an evaluation of the applicable § 3553(a) factors.

### *i. 21 U.S.C. § 841(b) Enhancement*

Defendant requests that this Court determine whether he still qualifies for the 21 U.S.C. § 841(b) enhancement based on his prior drug convictions.  (Doc. 541 at 22; Doc. 566 at 17).  At the time Defendant was convicted and sentenced, distribution and

possession with the intent to distribute 50 grams or more of crack cocaine in violation of 21

U.S.C. § 841(a)(1) (count one) and conspiracy to distribute and possession with the intent to

distribute more 50 grams or more of crack cocaine in violation of 21 U.S.C. § 846 (count

five) were Class A felonies that carried ten years to life imprisonment.  (Doc. 536 at 1-2).

However, at the time of his initial sentencing, Defendant's penalties for both counts one and

five were enhanced to mandatory life sentences under 21 U.S.C. § 841(b) based on prior

drug convictions that the Government included in its § 851 Notice.  (Doc. 536 at 1; *see also*

Doc. 190).

Since Defendant's conviction and sentencing in 2002, the penalties for the offenses

of which Defendant was convicted changed under the Fair Sentencing Act and the First

Step Act.  The Third Circuit summarized the relevant provisions of these statutes as follows:

> In 2010, section 2 of the Fair Sentencing Act increased the minimum quantity
> of cocaine base needed to trigger the ten-year minimum sentence under 21
> U.S.C. § 841(b) from 50 grams to 280 grams.  Pub. L. No. 111-220, § 2, 124
> Stat. 2371, 2372.  …
>
> Congress again revised the sentencing framework for drug offenses in 2018,
> when it passed the First Step Act.  Section 404(b) of that Act permitted a district
> court that had sentenced a defendant prior to the Fair Sentencing Act to
> "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act
> … were in effect at the time the covered offense was committed."  Pub L. No.
> 115-391, § 404(b), 132 Stat. 5194, 5222.  But a court was not "*require[d]* … to
> reduce any sentence pursuant to [that] section."  *Id.* § 404(c) 132 Stat. at 5222
> (emphasis added).  Separately, section 401 of the First Step Act redefined what
> prior drug convictions could be used to enhance a sentence under 21 U.S.C. §
> 841(b).  It said that the prior offense had to be not simply a felony drug offense
> but instead a "serious drug felony[,]" which is one for which the offender "served
> a term of imprisonment of more than 12 months[.]"  *Id.* at § 401(a), 132 Stat. at
> 5220.  Section 401 "appl[ied] to any offense that was committed before the date

of enactment of [the] Act, if a sentence for the offense ha[d] not been imposed as of such date of enactment." *Id.* § 401(c), 132 Stat. at 5221.

*Seabrookes*, 2022 WL 3098651, at * 1.

In accordance with section 2 of the Fair Sentencing Act, made retroactive by the First Step Act, Defendant's convictions for counts one and five have been reduced to Class B felonies, and the statutory penalties have been reduced to a minimum of five years imprisonment to a maximum of forty years imprisonment.  (Pub. L. No. 111-220, § 2, 124 Stat. 2371, 2372; *see also* Doc. 536 at 2).  However, due to Defendant's prior felony drug convictions, Section 841(b) still enhances his sentencing range to ten years to life imprisonment.  21 U.S.C. § 841(b).

Defendant argues that the 21 U.S.C. § 841(b) enhancement based on prior convictions no longer applies because section 1 of the First Step Act changed the definition for the prior drug convictions that could be used to enhance a sentence under 21 U.S.C. § 841(b).[5]  (Doc. 543 at 22; Doc. 566 at 18).  His argument is based on the fact that section 1 of the First Step Act provides that "the prior offense had to be not simply a felony drug offense but instead a 'serious drug felony[,]' which is one for which the offender 'served a term of imprisonment of more than 12 months[.]'"  *Seabrookes*, 2022 WL 3098651, at *1 (quoting Pub L. No. 115-391, § 404(a), 132 Stat. 5194, 5220).  According to Defendant, his

---

[5] Defendant claims that he is "not requesting retroactive application of § 851's *revised statutory sentencing scheme*, which lowers § 851's previous ranges.  We are arguing that at the time of resentencing *§ 851 does not apply at all*." (Doc. 566 at 18 (emphasis in original)).  It is unclear how this argument can be made without advocating for the retroactive application of section 1 of the First Step Act.  Indeed, Defendant's argument is based on the First Step Act's definition of "serious drug felony."  (*Id.*; Doc. 543 at 22).

prior convictions no longer qualify as "serious drug felonies," so he cannot be subjected to the more serious statutory penalty in 21 U.S.C. § 841(b).  (Doc. 543 at 22).

Defendant's argument misses a critical component of the analysis, which is the First Step Act's retroactivity.  Section 1 of the First Step Act "appl[ies] to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment."  Pub L. No. 115-391, § 404(c), 132 Stat. 5194, 5221.  Defendant committed the instant offense more than twenty years ago, and he was sentenced almost exactly twenty years ago.  The First Step Act was enacted in 2018. Thus, section 1 of the First Step Act, which redefines what prior drug convictions could be used to enhance a sentence under 21 U.S.C. § 841(b), does not apply to Defendant. *Seabrookes*, 2022 WL 3098651, at *2; *see also United States v. Aviles*, 938 F.3d 503, 510 (3d Cir. 2019).

Because Section 1 of the First Step Act is not applicable to Defendant, Defendant's sentence is still subject to the enhanced penalty in 21 U.S.C. § 841(b), which is "a term of imprisonment which may not be less than 10 years and not more than life imprisonment." 21 U.S.C. § 841(b).

In *Concepcion v. United States*, the Supreme Court stated that "a district court adjudicating a motion under the First Step Act may consider other intervening changes of law[.]"  142 S.Ct. at 2396.  "Because district courts are always obligated to consider nonfrivolous arguments presented by the parties, the First Step Act requires district courts

13

to consider intervening changes when parties raise them." *Id.* Importantly, though, "[b]y its terms, the First Step Act does not compel courts to exercise their discretion to reduce any sentence based on those arguments." *Id.*; *see also Seabrookes*, 2022 WL 3098651, at *1.

Here, Defendant asks this Court to consider the First Step Act's redefining of what prior convictions qualify for purposes of the § 841(b) enhancement, contending that the statutory penalty in 21 U.S.C. § 841(b) "aligns with the broader principles of federal sentencing that § 3553(a) requires a district court to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set out in § 3553(a)(2), which the Third Circuit has held apply to First Step Act proceedings." (Doc. 566 at 18 (internal citations and quotations omitted)). In essence, Defendant asks this Court to consider the intervening change in the law caused by section 1 of the First Step Act.

Defendant fails to explain how the lower sentencing range of five to forty years imprisonment "aligns with the broader principles of federal sentencing" or how it would be a "sentence sufficient, but not greater than necessary to comply with the purposes set out in § 3553(a)(2)[.]" (*Id.* 18 (internal citations and quotations omitted)). Simply repeating the standard by which district courts analyze the § 3553(a) factors to determine the appropriate sentence is insufficient to apprise the sentencing court of the individual factors at play in Defendant's resentencing. *See Seabrookes*, 2022 WL 3098651, at *3 ("In a § 3553(a) analysis, '[t]he court is not required to manufacture grounds for the parties or search for grounds not clearly raised on the record in a concise and timely manner.'" (quoting *United*

*States v. Dragon*, 471 F.3d 501, 505 (3d Cir. 2006))).  The reasons Defendant provides in

support of this Court precluding the application of the § 841 enhancement due to statutory

change created by section 1 of the First Step Act, relief to which Defendant is not entitled,

are altogether insufficient to persuade the Court that it should exercise its discretionary

authority to grant Defendant the relief he requests.  *See Concepcion*, 142 S.Ct. at 2404 ("Of

course, a district court is not required to be persuaded by every argument parties make, and

it may, in its discretion, dismiss arguments that it does not find compelling without a detailed

explanation.").

Based on the foregoing, Defendant's statutory penalties for his convictions on counts

one and five is ten years to life imprisonment.

### ii. USSG § 2A1.1 Cross Reference

Next, the Court will consider whether the cross reference to USSG § 2A1.1 is still

applicable to Defendant.  *Concepcion*, 142 S.Ct. at 2404 ("It is well established that a district

court must generally consider the parties' nonfrivolous arguments before it.").  As

summarized above, the base offense level calculation in the PSR prepared for Defendant's

initial sentencing in 2002 states:

> The guideline for 21 USC § 841(a)(1) and 846 offenses is USSG § 2D1.1.
> USSG § 2D1.1(d)(1) (cross-reference) states that if a victim was killed under
> circumstances constituting murder under 18 USC § 1111, USSG § 2A.1 is to
> be applied.  The Government's evidence establishes by a preponderance of
> the evidence that the defendant, Harvey Holland, and Shawn Anderson
> premeditatedly killed Jason Harrigan, constituting first degree murder.  Under
> USSG § 2A1.1, the base offense level is forty-three.

(PSR at ¶ 47).  In the addendum to the PSR filed on January 7, 2021, Probation stated that

"[t]he base level cross-reference to USSG § 2A1.1 is unchanged."  (Doc. 536 at 2).

Defendant objects to the use of the USSG § 2A1.1 cross-reference.  (*See, e.g.*, Doc.

543 at 23; Doc. 566-1 at 1).  According to Defendant,

> *Unlike* Murphy, who did "not assert that the Court made any factual errors,"
> (998 F.3d at 554) – and so was *not* entitled to reconsideration of the drug
> quantity he challenged – Jeffrey Holland *does* assert factual errors underlying
> the finding of murder by a preponderance of the evidence.  Because the
> *previously unavailable* trial transcript reveals new, relevant facts, which
> *contradict* facts "depended on by the district court at the first sentencing,"
> *Murphy* compels this Court to reconsider whether application of the murder
> cross reference is still fair and proper or would lead to imposition of a sentence
> far greater than necessary.  *See Murphy*, 998 F.3d at 555 & n.5.  By way of
> one example of contradictory facts, at trial, witness Sharonda Posey testified
> that Jeffrey Holland told her that he "didn't" kill Jason Harrigan, whose murder
> he was charged with committing in Count 4.  *See* Doc. 267 at 44-45.  The PSR,
> however, stated: "Posey remembered Jeffrey Holland later telling her that he,
> Harvey Holland, and Anderson shot Harrigan."  PSR ¶ 36.

(Doc. 567 at 5 (footnote omitted) (emphasis in original)).

The Court finds Defendant's arguments unpersuasive and without merit.  *See*

*Concepcion*, 142 S.Ct. at 2404 ("Of course, a district court is not required to be persuaded

by every argument parties make[.]").  Although Judge Caldwell could not review the trial

transcript in advance of Defendant's sentencing hearing because it was not yet available,

the facts contained in the transcript were not "new, relevant facts that did not exist, or could

not have reasonably been known by the parties, at the time of the first sentencing."  *Murphy*,

998 F.3d at 555 (citing *Easter*, 975 F.3d at 327).  This is because Judge Caldwell himself

presided over Defendant's trial, listened to all of the testimony offered at trial, and even

16

made "rough notes ... during the trial," (*See* Doc. 254 at 6), which he used at Defendant's

sentencing. *Murphy* cautioned that when deciding a First Step Act motion, "'the

resentencing court cannot ... reconsider the facts as they stood at the initial sentencing.'"

998 F.3d at 555 (quoting *Jones*, 962 F.3d at 1303).[6]  In short, Defendant requests this Court

do something it cannot do by asking for reevaluation of the facts underlying the application

of the USSG § 2A1.1 sentencing enhancement.  Therefore, the Court cannot, and will not,

review the specific facts underlying the sentencing court's decision from twenty years ago

that the USSG § 2A1.1 enhancement applied.

Furthermore, in an objection to the PSR, Defendant argues that "on Sixth

Amendment and due process grounds, the district court should not punish Mr. Holland for a

crime of which the jury did not convict him, and which charged criminal conduct the

Government later dismissed."  (Doc. 566-1 at 1; *see also* Doc. 566 at 12).  This is incorrect.

There are no "Sixth Amendment [or] due process" concerns with a sentencing court

considering conduct of which a defendant has been acquitted or has not been convicted to

determine his or her appropriate guidelines range and sentence.[7]  In fact, the Supreme

---

[6] Although the Third Circuit's decision *United States v. Shields* abrogated certain holdings in *Murphy*, *see Shields*, 2022 WL 3971778, at *4, it did not abrogate *Murphy*'s holding that "a sentencing court cannot reconsider factual findings made by the original sentencing court concerning the underlying offense."  *Shields*, 2022 WL 3971778, at *5 n.7 (citing *Murphy*, 998 F.3d at 554-55).

[7] Defendant argues that he was acquitted of count four, which charged Defendant with causing the death of Jason Harrigan through the use of a firearm during the commission of a drug trafficking crime in violation of 18 U.S.C. § 924(j).  (Doc. 566 at 13).  This is incorrect.  The jury was deadlocked on count four and as a result, the Court declared a mistrial.  (Doc. 242 at ¶ 1).  Instead of retrying Defendant on this count, the Government dismissed count four without prejudice.  (*See generally id.*; Doc. 243).

Court expressly endorsed this practice in *United States v. Watts*, 519 U.S. 148 (1997),

where it held that "a jury's verdict of acquittal does not prevent a sentencing court from

considering conduct underlying the acquitted charge, so long as that conduct has been

proved by a preponderance of the evidence." *Watts*, 519 U.S. at 157.  Similarly, the

Supreme Court has stated that "[s]entencing courts have not only taken into consideration a

defendant's prior convictions, but have also considered a defendant's past criminal

behavior, even if no conviction resulted from that behavior." *Nichols v. United States*, 511

U.S. 738, 747 (1994); *see also BMW of North America, Inc. v. Gore*, 517 U.S. 559, 573 n.19

(1996) ("A sentencing judge may even consider past criminal behavior which did not result

in conviction."); *Williams v. New York*, 337 U.S. 241 (1949) ("Highly relevant – if not

essential – to his selection of an appropriate sentence is the possession of the fullest

information possible concerning the defendant's life and characteristics.  And modern

concepts individualizing punishment have made it all the more necessary that a sentencing

judge not be denied an opportunity to obtain pertinent information by a requirement of rigid

adherence to restrictive rules of evidence properly applicable to the trial.").

For the aforementioned reasons, this Court will not redetermine the facts underlying

the applicability of the USSG § 2A1.1 enhancement on Defendant's sentencing guidelines,

nor will this Court entertain Defendant's arguments that are foreclosed by extensive

Supreme Court precedent.  Thus, following the Third Circuit's holding in *Murphy* that "the

resentencing court cannot … reconsider the facts as they stood at the initial sentencing," the

Court will overrule Defendant's objection to the 2021 PSR Addendum (Doc. 536) and deny

his request to reject the application of the USSG § 2A1.1 cross reference enhancement on

Defendant's base offense level calculation. Accordingly, Defendant's base offense level

remains 43 (*see* USSG § 2A1.1(a)).[8]

### *iii. Career Offender*

When considering a First Step Act motion, the resentencing court may consider a

defendant's arguments that he no longer qualifies as a career offender. *See Shields*, 2022

WL 3971778, at *5; *see also Concepcion*, 142 S.Ct. at 2403 (collecting cases). A defendant

qualifies as a career offender if:

> (1) the defendant was at least eighteen years old at the time the defendant
> committed the instant offense of conviction; (2) the instant offense conviction
> is a felony that is either a crime of violence or a controlled substance offense;
> and (3) the defendant has at least two prior felony convictions of either a crime
> of violence or a controlled substance offense.

USSG § 4B1.1(a). For purposes of the career offender enhancement, a controlled

substance offense is defined as "an offense under federal or state law, punishable by

imprisonment for a term exceeding one year, that prohibits the manufacture, import, export,

distribution, or dispensing of a controlled substance (or a counterfeit substance) or the

possession of a controlled substance (or a counterfeit substance) with the intent to

manufacture, import, export, distribute, or dispense." USSG § 4B1.2(b).

---

[8] Defendant's base offense level was ultimately determined to be 45 as a result of a two-level enhancement for obstruction of justice. (*See infra* Section III.c.v).

Here, at the time of Defendant's original sentencing, Defendant qualified as a career

offender due to his prior New Jersey felony drug convictions, but his base offense level did

not depend on his career offender status. (PSR at ¶ 57 ("Pursuant to USSG § 4B1.1, the

defendant is considered a career offender, however, because the offense level determined

above (45) is greater than that of a career offender (37, USSG § 4B1.1(A)), the offense level

as determined above is to be used.")).

In his sentencing memorandum and objections to the PSR, Defendant argues that

he does not qualify as a career offender at resentencing because his "New Jersey drug

convictions no longer serve as predicates for application of the career offender

enhancement" because the "New Jersey statutes at issue are indivisible and sweep more

broadly than the federal Controlled Substances Act ('federal CSA')." (Doc. 543 at 26-29;

Doc. 566 at 14).

In *United States v. Powell*, 774 F. App'x 728, 732 (3d Cir. 2019), the Third Circuit

considered whether the defendant's New Jersey convictions for possession with intent to

distribute a controlled substance qualified as predicate offenses for the career offender

enhancement. *Powell*, 774 F. App'x at 731-32. The Third Circuit held that the district court

properly sentenced the defendant as a career offender and reasoned:

> [T]his Court has held that where a controlled substances statute can be violated
> by possession of different types of drugs and the length of the sentence is
> affected by the specific drug in possession, the court should consider whether
> the defendant was convicted of possessing a substance that federal law also
> prohibits to determine whether the prior conviction is a predicate offense.
> Because both New Jersey and federal law specifically list heroin, the drug

> possessed by Powell in each offense, as a controlled substance, Powell's prior convictions constitute predicate offenses and the District Court properly sentenced Powell as a career offender.

*Id.* at 732 (citing *United States v. Abbott*, 748 F.3d 154, 159 (3d Cir. 2016); *United States v. Henderson*, 841 F.3d 623, 632 (3d Cir. 2016)) (footnotes omitted).

In this case, as stated above, the Government listed three of Defendant's prior New Jersey convictions in its § 851 Notice: (1) possession with intent to distribute cocaine in Essex County, New Jersey; (2) possession with intent to distribute cocaine in Essex County, New Jersey; and (3) possession with intent to distribute cocaine, possession with intent to distribute cocaine within 1,000 feet of a school in Essex County, New Jersey.  (PSR at ¶¶ 60-62; Doc. 190 at 1-2; Doc. 543 Ex. 1).

All three of Defendant's prior New Jersey convictions listed in the Government's § 851 Notice involved cocaine.  (Doc. 543, Ex. 1 at 2-6).  The term of imprisonment for violating NJ Rev Stat § 2C:35-5, one of the New Jersey statutes under which Defendant was convicted, varies depending on the type and quantity of drug possessed by a defendant.  *See* NJ Rev Stat § 2C:35-5; NJ Rev Stat § 2C:43-6.  Upon review of the New Jersey statute at issue and the analogous federal statute, the Court finds that the New Jersey statute does not sweep more broadly than the federal statute.  NJ Rev Stat § 2C:35-5 (listing "coca leaves and any salt, compound, derivative, or preparation of coca leaves, and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, or analogs, except that the substances shall not

21

include decocainized coca leaves or extractions which do not contain cocaine or ecogine

..."); 21 U.S.C. § 841(b)(1)(B)(ii)(I-IV) (specifically listing "coca leaves, except coca leaves

and extracts from coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or

their salts have been removed; cocaine, its salts, optical geometric isomers, and salts of

isomers; ecgonine, its derivatives, their salts, isomers, and salts of isomers; or any

compound, mixture, or preparation which contains any quantity of any substances referred

to in subclauses (I) through (III)").

Following the Third Circuit's reasoning in *Powell*, because the New Jersey statute

under which Defendant was convicted does not sweep more broadly than the federal

statute, Defendant's two prior New Jersey convictions for possession with intent to distribute

cocaine qualify as predicate offenses for purposes of the USSG § 4B1.1 career offender

enhancement.  Because the career offender enhancement only requires that a defendant

have two predicate convictions to qualify for the enhancement, USSG § 4B1.1(a), the Court

does not need to reach the issue of whether Defendant's conviction for possession with

intent to distribute cocaine within 1,000 feet of a school is a predicate offense for purposes

of the career offender enhancement.

In sum, Defendant's two New Jersey convictions for possession with the intent to

distribute cocaine in violation of NJ Rev Stat § 2C:35-5 qualify as predicate offenses for the

career offender enhancement in USSG § 4B1.1.  Therefore, Defendant still qualifies as a

career offender for purposes of USSG § 4B1.1, and the Court will deny Defendant's

objection to his career offender enhancement.

### iv. Drug Weight Attributable to Defendant

In *Murphy*, the Third Circuit held, "a district court is 'bound by a previous finding of

drug quantity that could have been used to determine the movant's statutory penalty at the

time of sentencing.'" 998 F.3d at 555 (quoting *Jones*, 962 F.3d at 1303).[9]  Despite the clear

holding of *Murphy*, Defendant argues that *Murphy* is not informative because:

> (1) Holland's original sentencing court did not rely on drug quantity when
> sentencing him – so there is no quantity to bind this Court as there was in
> *Murphy*; (2) Holland is not challenging the *jury's* drug quantity finding to reduce
> the *statutory penalty*, which was the focus of *Murphy*; and (3) Jeffrey Holland,
> unlike James Murphy, *asserts factual errors* in the Probation Officer's drug-
> weight calculation in the 2002 PSR *addendum*.

(Doc. 567 at 6 (emphasis in original)).  Defendant also objects to the PSR addendum from

2002, arguing that "[t]he problem with the PSR Addendum's conclusions as to drug weights

is that neither Anderson, nor Covington, nor Hughes testified at trial to the amounts the PSR

attributes to them" and contends that the PSR is "incorrect and unreliable" as to its recitation

of the trial witness' testimony.  (Doc. 566-1 at 9).

---

[9] In *Shields*, the Third Circuit stated that this holding of *Murphy* did not apply to defendant Shields because there, the district court "did not make any findings pertaining to these enhancements [based on drug weight] during Shield's original sentencing because it concluded that neither enhancement would change his Guidelines range given his career-offender status." *Shields*, 2022 WL 3971778, at *5 n.7.  As described in this Section, the original PSR and the original sentencing court in this case made factual findings as to the drug weight attributed to Defendant.  Thus, the factual scenario faced by this Court is materially different than the situation faced by the district court in *Shields*.

Much like Defendant's argument that the USSG § 2A1.1 cross reference enhancement should not apply, Defendant requests this Court to conduct an analysis in which it may not engage. As was the case when determining whether the Court can reevaluate the applicability of the USSG § 2A1.1 cross-reference, it cannot be said that the facts underlying the determination of the drug weight attributable to Defendant are "new, relevant facts that did not exist, or could not reasonably have been known by the parties, at the time of the first sentencing." *Murphy*, 998 F.3d at 555 (citing *Easter*, 975 F.3d at 327). Nothing has changed in the intervening twenty years between Defendant's original sentencing in 2002 and the Court's disposition of his First Step Act motion with regard to the weight of crack cocaine attributed to Defendant. This Court cannot "reconsider the facts as they stood at the initial sentencing." *Id.*

Moreover, Judge Caldwell did speak to the amount of crack cocaine attributable to Defendant at his sentencing. Judge Caldwell determined that "easily in excess of four thousand, five thousand grams of cocaine" could be attributed to Defendant. (Doc. 254 at 10-11). While Defendant's sentencing guidelines range was determined by the USSG § 2A1.1 cross-reference and not the drug weight attributed to Defendant, the *Murphy* Court held that "the resentencing court cannot reach beyond those circumstances to reconsider the facts as they stood at the initial sentencing" and the resentencing court is "bound by a previous finding of drug quantity that *could have been used* to determine the movant's statutory penalty at the time of sentencing." *Murphy*, 998 F.3d at 555 (quotation and citation

omitted) (emphasis added).  Judge Caldwell could have relied on Probation's determination of drug weight attributable to Defendant had he determined that USSG § 2A1.1 did not apply; thus, under *Murphy*, this Court cannot redetermine drug weight attributed to Defendant.  (*See* 2002 PSR addendum at 2 ("Should the Court find for the defendant, the guidelines would be calculated pursuant to § 2D1.1 [instead of § 2A1.1.]").

Finally, while Defendant is correct that, unlike the defendant in *Murphy*, he asserts factual errors in the calculation of drug weight attributed to Defendant in the 2002 PSR addendum, his argument that this fact has any impact on whether the Court can reevaluate the drug weight attributable to Defendant is without merit.  The Third Circuit stated that its "conclusion [that the resentencing court may not reconsider the sentencing court's determination of drug weight that could have been used to determine the defendant's statutory penalty] would not change even if [Murphy] had objected" to the drug quantity calculation at the time of his initial sentencing.  *Murphy*, 998 F.3d at 554 n.3 ("The parties disagree on whether Murphy objected to the drug quantity at his initial sentencing, but our conclusion would not change even if he had objected.").  The holding of *Murphy* does not turn on whether a defendant objects to the drug weight attributable to him at the time of his original sentencing.  Therefore, Defendant's objection to the drug quantity calculation is immaterial to this Court's analysis of whether it can revisit the drug quantity attributed to Defendant.

Accordingly, the Court cannot revisit the weight of crack cocaine attributed to Defendant that was assessed by Probation and determined by the court at the time of his

initial sentencing in 2002, and is "bound by the finding of drug quantity that could have been used to determine [Defendant's] statutory penalty at the time of sentencing." *Id.* at 555 (quotation omitted); *see also Shields*, 2022 WL 3971778, at *5 n.7.

### v. Base Offense Level Adjustment for Obstruction of Justice

Finally, Defendant takes issue with the two-level adjustment to his base offense level for obstruction of justice, which increased his base offense level to 45. (Doc. 543 at 29; Doc. 566 at 19-20; Doc. 566 at 8-9; *see also* PSR at ¶ 51). Defendant contends that the "testimony attributed to [three trial witnesses in the narrative supporting the obstruction of justice enhancement] is incorrect, and an accurate accounting of what they actually testified at trial does *not* support a finding of obstruction by Mr. Holland." (Doc. 566-1 at 8 (emphasis in original)).

As this Court has stated many times above, the Court cannot and will not "reconsider the facts as they stood at the initial sentencing." *Murphy*, 998 F.3d at 555 (citation omitted); *see also Shields*, 2022 WL 3971778, at *5 n.7. Defendant does not identify any "new, relevant facts that did not exist, or could not reasonably have been known by the parties, at the time of the first sentencing" while arguing that the obstruction of justice adjustment does not apply. Rather, Defendant makes specific objections to the PSR, even though the time for objecting to the PSR prepared for Jeffrey's original sentencing in 2002 has long since passed. Because all of the facts underlying the obstruction of justice adjustment are unchanged, this two-level adjustment still applies.

### *vi. Defendant's Base Offense Level and*

### *Criminal History Category at Resentencing*

Above, the Court analyzed the impact of the First Step Act and Fair Sentencing Act

on Defendant's sentencing exposure at resentencing.  In light of this analysis, the Court

determines that, due to the application of the USSG § 2A1.1 cross reference and the two-

level adjustment for obstruction of justice, Defendant's base offense level is 45.  However,

"[a]n offense level of more than 43 is to be treated as an offense level of 43."  USSG § 5A

(Application Note 1).  Defendant's criminal history category is VI.  Accordingly, Defendant's

Sentencing Guidelines results in a range of life imprisonment.  USSG § 5A.

### *d. 3553(a) Factor Analysis*

Section 404(b) of the First Step Act requires that the resentencing court "impose a

reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at

the time the covered offense was committed."  During a First Step Act resentencing, courts

"are authorized to take into account, at the time of resentencing, any changed

circumstances, 'includ[ing] post-sentencing developments, such as health issues or

rehabilitation arguments[.]"  *Shields*, 2022 WL 3971778, at *4; *see also Concepcion*, 142

S.Ct. at 2398-2404; *Murphy*, 998 F.3d at 559; *Easter*, 975 F.3d at 327.  Here, the parties

filed sentencing memoranda and other written briefings that discussed the § 3553(a)

factors, attached relevant documentation (such as certificates from successful completion of

Bureau of Prisons programming), and identified objections to the PSR.  *See Shields*, 2022

27

3971778, at *8.  Accordingly, the Court is prepared to address the § 3553(a) factors based on the written submissions by the parties.

Above, the Court determined that Defendant is still subject to the same statutory maximum sentence of life imprisonment at this resentencing as he was at the time of his initial sentencing.  Thus, the Court applies the § 3553(a) factors.  In doing so, the seriousness of Defendant's crimes strongly disfavor a reduction in his sentence.  On October 10, 2002, Defendant appeared for sentencing before the late Honorable William W. Caldwell after having been convicted on three counts of a second superseding indictment: of distribution and possession with the intent to distribute 50 grams or more of crack cocaine in violation of 21 U.S.C. § 841(a)(1) (count one), use of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) (count three), and conspiracy to distribute and possess with the intent to distribute 50 grams or more of crack cocaine in violation of 21 U.S.C. § 846 (count five).  (Doc. 248 at 1). Defendant was sentenced to life imprisonment on each of counts one and five, to run concurrently with each other, and 60 months imprisonment on count three to run consecutive to counts one and five.  Terms of ten year supervised release on each of counts one and five and a three year term on count three were also imposed, all to be served concurrently.

### i. Defendant's History and Characteristics

Defendant's early years can be described as a time when he was lacking in family support and affection, as well as a time when he suffered considerable abuse as a child.

28

(*See* PSR at ¶¶ 85-87).  Defendant's sentencing memorandum addressing the 3553(a)

factors (Doc. 543) describes his parents as allowing "their alcoholism taking precedence

over all other matters" and adds that they "fought constantly and violently, culminating in the

father shooting his wife in the abdomen whilst she was pregnant" with Defendant's brother.

(Doc. 543 at 4).  The memorandum describes Defendant being abandoned by his mother at

nine months of age and Defendant then being left to live with his mother's sister, who

physically abused him and her own children.  (*Id.* at 5).  Thereafter, the memorandum

details Defendant's early entry into criminal activity at age 5 which continued through his

adolescence and into adulthood.  (*Id.* at 6).  Defendant's criminal activity is detailed both in

his sentencing memorandum (Doc. 543 at 9-15) and in the PSR, which in paragraphs 58-67

detail, *inter alia*, three separate convictions for possession with intent to distribute cocaine

(PSR at ¶¶ 61-62) as well as possession of narcotic equipment (PSR at ¶ 63).

### ii. Nature and Circumstances of the Offenses and
### Application of 18 U.S.C. § 3553(a) Factors

The sentence imposed by Judge Caldwell accurately reflects the seriousness of

each of the offenses for which Defendant was sentenced.  The jury found that Defendant

possessed and/or possessed with the intent to distribute 50 grams or more of crack

cocaine.  (PSR at ¶ 5).  It further indicates that Defendant, together with Harvey Holland,

Shawn Anderson, and Lavelle Gamble, were involved in "the unlawful distribution of

substantial amounts of crack cocaine" in the Harrisburg area.  (*Id.* at ¶ 7).  Defendant's

associates, Gamble and Anderson, were each shot to death, with Anderson having been murdered following a drug-related incident. *Id.* Paragraphs 9-29 describe in considerable detail Defendant's crack cocaine distribution activities, as well as his possession of firearms, at least one of which he acquired in a trade for crack cocaine and cash. (*Id.* at ¶ 26). The PSR cites the testimony of Anthony Braxton as evidence of Defendant's crack-cocaine distribution operation and includes Braxton's statement that both Defendant and his brother Harvey Holland, "bragged to him that they had shot an Ernie Stewart in a phone booth at the corner of 19th and Bellevue Streets in Harrisburg." (*Id.* at ¶ 11). Braxton added that "the Hollands took him past the phone booth and pointed out the bullet holes in the phonebooth." (*Id.*). Law enforcement confirmed that such an incident had occurred, as Stewart was hit in the head and had become mentally incapacitated. (*Id.* at 11). Significantly, the PSR establishes that Defendant was a known high level, violent drug dealer.

Contrary to the assertions by Defendant in his sentencing memorandum, there is abundant evidence of Defendant's use of violence in connection with his drug activities. (*See* PSR at ¶¶ 30-40). In particular, there is sufficient evidence to establish by the preponderance of the evidence that, as Judge Caldwell found at the sentencing hearing held before him on October 10, 2002:

> So you have a lot of testimony here, and the question is to judge the credibility of it. I did hear the trial. It escapes me how the jury failed to convict Mr. Holland of this drug related killing. There is no doubt that it was a drug related killing because I think if you read the testimony, you have to get that message.

The killing was committed during the time frame of the conspiracy.  Toyann Anderson said that they had to do it, I believe the victim was talking about taking the profits from Mr. Holland and his codefendants.  And Bynum testified that the defendant told him that he tried to work out the drug deal with the victim, and that he wouldn't have anything to do.

I think Omar Dykes told investigators at least – I don't think he testified, but he told investigators that the defendant and these others fell out over a drug debt. That is pretty much the substance of the testimony.

If I had to listen to just one of these witnesses and determine whether I was getting a truthful statement, I agree with you, Mr. O'Connell, I would have some problem.  But when you take the totality of this evidence and all the testimony – and these witnesses, by the way, were sequestered – and the testimony is just very consistent, and I think these witnesses were doing their best to give truthful testimony.

Granted, they were giving it for various self-serving reasons, but I think they were assisting themselves by telling the truth rather than by coming in here and just telling lies.

So I have absolutely no trouble concluding that Mr. Holland was involved in the drug killing of Harrigan.  I am not only persuaded by the preponderance of the evidence, I don't think there is any reasonable doubt.

Certainly one or more of the jurors felt the same way because they were hung and couldn't agree, and we never know what causes hung juries.

But having heard the testimony had I been on the jury, I would have come to the conclusion I have just announced.

We also have to take note of the defendant's prior record.  He has really been in trouble for fifteen or so years since he was 18 years of age, all kinds of serious offenses including three prior drug offenses.

(Doc. 254 at 9-10).

It is this Court's view that the conduct of Defendant warrants a sentence of life imprisonment to not only reflect the seriousness of the offense as detailed here, but also to promote respect for the law and provide just punishment for the offenses themselves.

In addition, a life sentence on each of counts one and five is appropriate and necessary to afford adequate deterrence for criminal conduct. Defendant's drug distribution activities, together with his use of violence and murder in furtherance of drug distribution, requires that the sentence imposed by the sentencing court remain unchanged.

Defendant advances the argument that he is entitled to a reduction in sentence because of his post-conviction efforts at rehabilitation and the diminishing likelihood of recidivism due to his age (54). (Doc. 543 at 36-37; *see also* Doc. 509 at 18-20). Defendant also details his health challenges, including contracting COVID-19 and salmonella, in addition to needing multiple surgeries, and states that they have "had a tremendously negative impact on the time he has served." (Doc. 543 at 34-35). In this Court's view, these factors do not outweigh his disrespect for the law, the seriousness of the drug trafficking in which he has engaged, the murder of Jason Harrigan, and the lack of any evidence of remorse (see below).

The arguments made by Defendant's counsel assailing the accuracy of the testimony and evidence against the Defendant are inappropriate for consideration under *Easter* and *Murphy*, which make it clear that the resentencing court "'cannot ... reconsider the facts as they stood at the initial sentencing.'" *Murphy*, 998 at 555 (quoting *Jones*, 962 F.3d at 1303); *see also Easter*, 975 F.3d at 326-27. Moreover, after careful review of the

submissions by Defendant's counsel, the Court finds neither evidence nor argument of

acceptance of responsibility or remorse by Defendant. By way of illustration, the following

passages from Defendant's sentencing memorandum show what can only be described as

a failure or an outright refusal to accept the seriousness of the drug activities in which

Defendant engaged. At page 31, Defendant describes his conduct as follows:

> He sold personal-use amounts of crack cocaine to established users, through
> a personal delivery service of sorts, going to meet his customers when they
> reached out to him by pager. He was not hustling on the street, he was not
> introducing crack to children, he was not competing for territory. It was a small-
> time operation where he, and his brother and their adult nephew, teamed up to
> go to New York to get high-quality crack, and bring it back for their customers.
> The income they made from this trade did not pay for lavish living, no expensive
> cars, certainly no houses.

(Doc. 543 at 31). Likewise at page 17 Defendant writes:

> The trial testimony established that Jeffrey Holland did *not* solicit customers on
> street corners, but that his customers were established crack users who sought
> him out because of the quality of crack he supplied. … In other words, he did
> not turn people on to the drug; he did not engage in hand-to-hand sales with
> the general public; this was not some three-person operation where one acted
> as look-out, one met with the customer, and one guarded the stash; he did not
> have people working for him; nor was he a member of a gang.

(*Id.* at 17).

Wholly apart from the fact that these descriptions of Defendant's activities fly in the

face of compelling evidence of Defendant's extensive drug distribution activities, use of

firearms, and violence, they bespeak an indifference to the seriousness of his crimes.

Jeffrey Holland's argument reduces to the empty, invalid claim that the persons to whom he

sold crack were already addicts, so his drug sales to them are somehow less reprehensible.

33

His argument that one can justifiably recognize a distinction between first time users and

those already addicted in support of a quest for leniency is rejected by this Court.  This

attempt at minimization provides no basis for a sentence reduction since selling drugs to

already addicted users is no less pernicious than drug sales to those not yet under the sway

of illicit drugs, and no less destructive to community safety.  It displays a complete lack of

understanding of the perils of drug distribution and demonstrates a defendant who, after

spending the last two decades in prison, is devoid of remorse and unwilling to take

responsibility for his actions.

The Court further finds that the sentence imposed by the sentencing court is

sufficient, but not greater than necessary, to satisfy the sentencing factors of 18 U.S.C. §

3553(a).  Nothing offered by Defendant has provided this Court any basis to revise the

sentence originally imposed in 2002.

In *Shields*, the Third Circuit provided district courts with guidance as to how they

should decide First Step Act motions, and this Court has followed the recommended

process.  The Court determined that Defendant was eligible for relief under the First Step

Act (*see supra*, Section III.a) and Probation prepared an addendum to the PSR that

addressed Defendant's proper Guidelines calculation.  *Shields*, 2022 WL 371778, at *8

("First, upon receiving the motion, the court determines whether the defendant is eligible for

relief under the statute; second, the court orders the Probation Office to prepare an

addendum to the PSR addressing the proper Guidelines calculation[.]").  Next, the Court

provided the parties with multiple opportunities to "file memoranda noting any objections to the PSR, discussing the § 3553(a) factors, and attaching any relevant documentation." *Id.*; (*see also supra*, n.1).  The Court determined that a resentencing hearing was not necessary because it had "sufficient information to decide whether and by how much to reduce [Defendant's] sentence" based on the "record of the original sentencing, along with the arguments of the parties" in relation to the instant § 404(b) motion.  *Shields*, 2022 WL 371778, at *7.

Finally, the Court determined that Defendant's sentence should be reduced and determined the appropriate reduction.  *Shields*, 2022 WL 371778, at *8 ("[F]ourth, the Court decides whether to reduce the defendant's sentence, and if so, by how much.").  In doing so, the Court abided by the directives from the Supreme Court and the Third Circuit.  When raised by the parties in a "nonfrivolous argument[ ]," the Court considered "intervening changes of law [and] fact," such as the § 3553(a) factors and Defendant's post-conviction rehabilitation efforts and health challenges.  *Concepcion*, 142 S.Ct. at 2396, 2404; *Shields*, 2022 WL 371778, at *4 ("As far as what courts 'may' consider, we had held that they are authorized to take into account, at the time of resentencing, any changed circumstances, 'including post-sentencing developments, such as health issues and rehabilitation arguments, as were raised' by the parties, *Easter*, 975 F.3d at 327, *Murphy*, 998 F.3d at 559. And the Supreme Court in *Concepcion* agreed.").  In addressing these "nonfrivolous arguments," the Court abided by the Supreme Court's and Third Circuit's conclusion that "a

district court's discretion does not empower it to 'recalculate a movant's benchmark Guidelines range in any way other than to reflect the retroactive application of the Fair Sentencing Act,' as 'the First Step Act directs district courts to calculate the Guidelines range as if the Fair Sentencing Act's amendments had been in place at the time of the offense.'" *Id.* (quoting *Concepcion*, 142 S.Ct. at 2402 n.6).

As required by the First Step Act, the Court "reasoned through [the parties'] arguments,'" *id.* (quoting *United States v. Maxwell*, 991 F.3d 685, 694 (6th Cir. 2021)), as demonstrated by the above analysis in this Memorandum Opinion. *See id.* ("When it comes to that reasoned explanation, the First Step Act leaves much [ ] to the judge's own professional judgment." (internal citation and quotation omitted)). However, "[n]othing in the text and structure of the First Step Act expressly, or even implicitly overcomes the established tradition of district courts' sentencing discretion." *Id.* at 2401. Accordingly, through the application of the Fair Sentencing Act, the First Step Act, and the proper exercise of its discretion, the Court determines that Defendant is not entitled to a reduced sentence, and his sentence will remain life imprisonment on each of counts one and five, to run concurrently with each other, and 60 months imprisonment on count three to run consecutive to counts one and five.

**IV. CONCLUSION**

Based on the foregoing analysis, the Court will grant Defendant's Motion for

Resentencing pursuant to Section 404(b) of the First Step Act and will deny the relief

requested by Defendant in compliance with § 404(b) of the First Step Act.


_____
Robert D. Mariani
United States District Judge